## TENNESSEE PUBLISHING CO. *v.* AMERICAN NATIONAL BANK ET AL.

No. 48.  Argued October 22, 23, 1936.—Decided November 9, 1936.

*Messrs. A. H. Roberts* and *Lewis S. Pope* for petitioner.

*Mr. Cecil Sims* for respondents.

Mr. Chief Justice Hughes delivered the opinion of the Court.

The Circuit Court of Appeals affirmed a decree of the District Court dismissing the petition of the debtor, Tennessee Publishing Company, and its plans of reorganization, in a proceeding under § 77 B of the Bankruptcy Act. The court held (1) that the debtor's proposal was not a workable one and hence had not been presented in good faith as that phrase was used in the statute; and (2) that sub-section (b) (5) of § 77 B, as applied to the adjustment of claims of non-assenting lienholders, was invalid under the due process clause of the Fifth Amendment.[1] 81 F. (2d) 463. We granted certiorari.

---

[1] The provision is as follows:

"(b) A plan of reorganization within the meaning of this section . . . (5) shall provide in respect of each class of creditors of which less than two thirds in amount shall accept such plan (unless the claims of such class of creditors will not be affected by the plan, or the plan makes provision for the payment of their claims in cash in full), provide adequate protection for the realization by them of the value of their interests, claims, or liens, if the property affected by such interests, claims, or liens is dealt with by the plan, either as provided in the plan (a) by the transfer or sale of such property subject to such interests, claims, or liens, or by the retention of such property by the debtor subject to such interests, claims, or liens, or (b) by a sale free of such interests, claims, or liens at not less than a fair upset price and the transfer of such interests, claims, or liens

At the beginning of the proceeding the District Judge approved the petition for reorganization as having been filed in good faith, but by an order to show cause reserved to all persons in interest the opportunity to present their objections. Answers and motions to dismiss were filed by bondholders. Three successive plans of reorganization were submitted and opposed. Several hearings were had. It appears that for more than two years prior to this proceeding, the affairs of the debtor had been in charge of a receiver appointed by the District Court upon a creditors' bill. An appraisal of the debtor's property showed assets worth about $295,000. Outstanding bonds, secured by mortgage, were in default and amounted with interest to approximately $900,000. There were unsecured claims of about $300,000.

We shall not attempt to state the many details of the various plans. It may be said in a general way that the first plan, and the second presented "as a supplement to, or alternate of," the first, contemplated an appraisal of the property, the determination of the value of the bonds, and the issue of new bonds and the distribution of the proceeds of their sale, after payment of costs, expenses and preferred claims, among the secured and unsecured creditors and stockholders. By an amendment the debtor offered to pay in cash the amount of the appraised value of the property as it might be judicially determined, or to pay the "actual cash value of all valid interests, claims or liens" as fixed by the court. The third plan looked to

---

to the proceeds of such sale; or (c) by appraisal and payment either in cash of the value either of such interests, claims, or liens, or, at the objecting creditors' election, of the securities allotted to such interests, claims, or liens under the plan, if any shall be so allotted; or (d) by such method as will in the opinion of the judge, under and consistent with the circumstances of the particular case, equitably and fairly provide such protection; . . ." [48 Stat. 911, 913–914.]

the retention of the property by the debtor subject to the lien of the bonds scaled to 80 per cent. of their face value or, in the absence of assent, to an amount found by the court to be due. Provision was also made for the issue of preferred stock.

In his final opinion, upon the third plan, the District Judge said that it would "manifestly be unjust to the bondholders" to undo what had been done in the equity case; that "the validity and amount of the bonds outstanding" had been established in that case upon the report of the standing master, to which the debtor had not excepted; and that it was admitted that the debtor was "notoriously insolvent."

The District Judge was unable to see how the bondholders could realize the value of their bonds, or how that value could be ascertained "except by a public sale" of the mortgaged property. He thought that the effect of the last plan was to disregard what had been done in the equity suit and to delay a final administration of the debtor's estate indefinitely. He found that none of the bondholders were willing to adopt the plan, and that more than two-thirds of the bondholders and more than fifty per cent. of the unsecured creditors had affirmatively declined to accept it. He expressed the view that in such circumstances the adoption of the plan would deprive the secured creditors of their constitutional rights. While again ruling that the petition for reorganization was filed in "good faith," he saw no alternative "except to dismiss the petition and let the property be sold in the equity case."

The Circuit Court of Appeals considered that the District Judge in passing upon the issue of good faith was guided mainly by a consideration of the debtor's honesty of purpose. The court believed that more was required; that the statute had in view the submission of a practicable plan with a reasonable prospect for the rehabilita-

tion of the debtor, and that hence in the finding of good faith by the District Judge there was an erroneous application of the law. Despite that, the court recognized that the decree of the District Court should still be affirmed if right, however erroneous might be any given conclusion of law.

Although reaching the conclusion that the plan of reorganization was not a workable one and failed to meet the statutory test, the Court of Appeals proceeded to consider the constitutionality of sub-section (b) (5) and held it invalid. This ruling was premature. The constitutional question was not necessarily presented as with such a plan no case had been made for the application of sub-section (b) (5). It is a familiar rule that the court will not anticipate the decision of a constitutional question upon a record which does not appropriately present it. *Liverpool, N. Y. & P. S. S. Co.* v. *Commissioners,* 113 U. S. 33, 39; *Cincinnati* v. *Vester,* 281 U. S. 439, 448, 449; *Arizona* v. *California,* 283 U. S. 423, 463, 464.

Nor do we need to inquire as to the precise limits of the concept of "good faith" as required by § 77 B. Whatever these limits may be, the statute clearly contemplates the submission of a plan of reorganization which admits of being confirmed as *"fair and equitable"* and as *"feasible."* However honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation. Sub-section (f) of § 77 B provides for the confirmation of a plan only if the District Judge is satisfied "(1) that it is fair and equitable and does not discriminate unfairly in favor of any class of creditors or stockholders, and is feasible." These are prime conditions. Unless the District Judge finds that the plan has these qualities he need go no further. Unless he so finds, he has no authority to proceed. There is no occasion for the District Judge to consider the con-

stitutional validity of the application of the clauses of sub-section (b) (5) if the debtor's proposal is not found to be "fair" and "feasible." It was the duty of the District Judge in this instance to consider the debtor's proposal in that aspect. He did not find that proposal to be fair and feasible. On the contrary, he deemed it to be unjust to the bondholders to override what had been accomplished in the equity case. He found that it was impracticable to determine the value of their bonds except by a public sale and, in view of the financial condition of the debtor, he deemed a sale of its property to be "inevitable." And along with these considerations, the proposal encountered what he described as the almost unanimous opposition of the secured creditors and the refusal of assent by a majority of the general creditors. Where the debtor's plan of reorganization is not confirmed the District Judge is authorized to dismiss the proceeding. Sub-section (c) (8).

The question before the Circuit Court of Appeals was whether, upon the record, the District Court erred in refusing to confirm the plans and in dismissing the proceeding. The Court of Appeals examined the debtor's last proposal as its ultimate effort to repel attack upon the feasibility of reorganization. The court found that the plan was not understandable in all of its phases, even after diligent effort "to separate argument from concrete proposals" and "to reconcile apparently conflicting clauses." The provisions for a bond issue and for classes of preferred stock, out of the proceeds of which unsecured creditors and preferred stockholders were to be compensated, the court found to be "wholly incomprehensible." Certainly the District Court was not bound to consider such a plan as fair and feasible, or, in view of the situation which the record disclosed, to continue the proceeding.

24

That was an entirely adequate ground for sustaining the decree of the District Court without attempting to determine the constitutional validity of sub-section (b) (5). Quite apart from that question, upon which we express no opinion, the decree of the Circuit Court of Appeals, affirming that of the District Court, should in turn be

*Affirmed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.