## PROVIDENT MUT. LIFE INS. CO. OF PHILADELPHIA v. UNIVERSITY EVANGELICAL LUTHERAN CHURCH OF SEATTLE.

### No. 8323.

Circuit Court of Appeals, Ninth Circuit.

June 30, 1937.

Samuel Knight, F. J. Kilmartin, and James W. Archer, all of San Francisco, Cal., and E. R. York and Arthur F. York, both of Tacoma, Wash., for appellant.

Edward W. Allen, William E. Froude, Gerald De Garmo, and A. R. Hilen, all of Seattle, Wash., for appellee.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from an order denying appellant's motion to dismiss a debtor's petition for reorganization under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207).

On July 1, 1936, the University Evangelical Lutheran Church, debtor, filed a petition for reorganization under section 77B, alleging that it was a corporation of the State of Washington and entitled to seek relief under that section.

The petition alleged that the debtor's liabilities exceeded its assets and that it was unable to meet its debts as they matured. The assets shown were five parcels of real estate. Two of these were vacant and were valued at $6,500. The third and fourth parcels were improved with a brick church building and valued at $34,000. The fifth, upon which the appellant holds a first mortgage, was improved with a parsonage and was said to be worth "in excess of $13,000.' There were no other assets save miscellaneous personal property, the value of which was not listed.

The total assets thus amounted to slightly in excess of $53,500.

The petition listed liabilities of $63,808.-73. Of this figure, $9,440 was owed to unsecured creditors, the remainder being secured by first, second, and third mortgages on the real property described.

Appellant Provident Mutual Life Insurance Company held a first mortgage upon the fifth parcel to secure an obligation of $6,000, plus interest at 6½ per cent., advanced to the debtor in 1930, all of which was to mature in 1935. Nothing has been paid on the principal. At the filing of the petition there was owing to appellant $6,000 principal, plus $1,270 accrued interest.

The petition set out that the appellant insurance company had foreclosed its mortgage in the Washington state court. A judicial sale had taken place and the property bought in by appellant. The sale occurred in June, 1936, so at the time of filing the petition the debtor had a one year right of redemption. Rem.Rev.Stat.Wash. §§ 595, 602; Ford v. Nokomis State Bank, 135 Wash. 37, 45, 237 P. 314.

The petition disclosed that the debtor had two sources of income: (1) Voluntary contributions from its members, and (2) a prospective grant of $1,200 from the Board of Home Missions and Church Extensions of the United Lutheran Church of America (one of the mortgagees). It was believed, the petition stated, that if a plan of reorganization was consummated, a further grant from the Board would be forthcoming. Income from voluntary contributions available for the payment of debts was estimated at $1,073 annually.

The plan of reorganization proposed by the petition contemplated, first, to wipe out the accrued interest on the first mortgages by the $1,200 to be received from the Board of Home Missions. The first mortgages came up to $24,500, with a total accrued interest of $4,471. Thus, the first mortgagees would get slightly less than one-fourth of their interest claims. Appellant would have to take $350 in place of $1,270.

The principal amounts of the first mortgages were to be handled by a sum of $980 annually, raised by the congregation. The interest rate was to be cut to 2 per cent. Appellant was to receive $20 per month to take care of both the principal and interest at the proposed new rate. Any further grants from the Board of Home Missions were to be applied in reducing the principal of the first mortgages. This plan was proposed for a five-year period.

It was proposed that $93 be raised from the congregation annually to pay off the second mortgage indebtedness, amounting to $9,300. As to the third mortgage obligation, totaling $18,500, the proposed plan contemplated that nothing be paid thereon for five years.

Of the unsecured indebtedness, $140, owed to a bank, was to be paid immediately. The remainder, some $9,000 owed the Board of Home Missions, was not to be paid during the period of reorganization.

On July 2, 1936, the District Court entered an order approving the petition, continuing the debtor in possession of the properties involved, and enjoining all proceedings against it.

The appellant then filed its motion to dismiss the petition so far as it affected the appellant or its first mortgage on the property. The motion set forth the mortgage, the defaults, the foreclosure in the state court, the judicial sale, and the purchase of the property by appellant at the sale.

The motion to dismiss was grounded on the contentions: (1) That the court was without jurisdiction over appellant or the property covered by its mortgage; (2) that the plan of reorganization was not "feasible, fair or equitable"; and (3) that the petition was not filed in good faith.

The motion was denied and an appeal was allowed by this court.

■■ The contention that the court was without jurisdiction over the property covered by appellant's mortgage by reason of the judgment of foreclosure and the foreclosure sale, is without merit. During the one year period of redemption, the judgment debtor retains legal title to the estate. Ford v. Nokomis State Bank, supra, 135 Wash. 37, 45, 237 P. 314. This is more than sufficient to sustain the authority of the court over the property. Gross v. Irving Trust Co., 289 U.S. 342, 344, 53 S.Ct. 605, 77 L. Ed. 1243, 90 A.L.R. 1215; Heffron v. Western Loan & Building Co. (C.C.A.9) 84 F. (2d) 301, 303.

■ The second ground urged for dismissal, that the plan of reorganization is not feasible, fair or equitable, is not properly before us. It is based upon subsection (f) of 77B (11 U.S.C.A. § 207(f), which provides that the judge shall *confirm* the plan if he finds that "it is fair and equitable * * * and is feasible." There has been no confirmation of a plan in the present case.

The third reason urged for dismissal of the petition was that the petition was not filed in good faith. This is based upon 77B(a), 11 U.S.C.A. § 207(a): "Upon the filing of such a petition * * * the judge shall enter an order either approving it as properly filed under this section if satisfied that such petition * * * complies with this section and has been filed in good faith, or dismissing it."

Before considering the merits of appellant's contention, a preliminary argument of the debtor must be disposed of. The debtor asserts that a single creditor has no standing to urge dismissal on the ground of lack of good faith. The debtor argues that at least three creditors must join in such a motion. It bases this argument on that portion of 77B(a) which reads: "If three or more creditors who have provable claims which amount in the aggregate in excess of the value of securities held by them, if any, to $1,000 or over * * * shall, prior to the hearing * * * appear and controvert the facts alleged in the

petition * * * the judge shall determine as soon as may be the issues presented by the pleadings * * * and unless the material allegations of the petition * * * are sustained by the proofs, the proceedings shall be dismissed."

It seems clear that the objection which is to be taken by three or more creditors is an objection based on a factual controversy. They must contest a fact or facts alleged in the petition. Good faith is not a fact to be alleged in the petition. It is a conclusion to be drawn one way or another by the judge from the facts alleged in the petition or elsewhere. Clearly this portion about three creditors has nothing to do with the requirement of good faith.

It would be artificial and unjust to hold that if a petition for reorganization is filed in bad faith, say with no bona fide intention of effecting a reorganization, but merely to hinder or defraud creditors, a single creditor so affected could not urge that bad faith upon the trial judge as a ground for dismissal of the proceedings.

The next question concerns itself with the meaning of "good faith" as stated in the statute.

Good faith is more than bona fide intentions. The petition in order to satisfy this requirement must show some possibility of successful reorganization. In Manati Sugar Co. v. Mock, 75 F.(2d) 284, 285, the Circuit Court of Appeals for the Second Circuit said: "The good-faith provision of the statute is not satisfied merely by honesty and good intentions. There must be a showing that the petitioners have a basis for expecting that a reorganization can be effected."

The Sixth Circuit Court of Appeals expressed a like conclusion in Re Tennessee Publishing Co. (C.C.A.) 81 F.(2d) 463, 466: "We think it clear, however, in agreement with the Second circuit, that something more than sincerity of intention was intended. The purpose of the statute is to relieve distressed debtor corporations and to provide the mechanics for reorganization where reasonable expectation of continued useful existence may be fairly entertained. This being so, something more must be demonstrated by the debtor than mere honesty or sincerity of purpose. If not, then the way is open to the exploitation of every involved corporation by visionaries whose illusory and optimistic imaginations outrun their business judgments, and the interest of every legitimate creditor is at the mercy of debtors whose sole hope of financial salvation is an abiding faith in miracles."

This case was affirmed by the United States Supreme Court on another ground. Tennessee Pub. Co. v. American Nat. Bank, 299 U.S. 18, 57 S.Ct. 85, 81 L.Ed. ——. In the course of the opinion Chief Justice Hughes stated (299 U.S. 18, 22, 57 S.Ct. 85, 87, 81 L.Ed. ——) : "Nor do we need to inquire as to the precise limits of the concept of 'good faith' as required by section 77B. Whatever these limits may be, the statute clearly contemplates the submission. of a plan of reorganization which admits of being confirmed as *fair and equitable* and as *feasible.* However honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation."

These holdings completely resolve the issue of good faith against the debtor in the case at bar. A more visionary and hopeless scheme for financial rehabilitation could hardly be imagined. Exclusive of continuing interest, the debtor has obligations exceeding $10,000, yet over the proposed five year plan of reorganization it plans to raise only a little more than $6,000 and that from sources none too certain.

But aside from the hopelessness of the proposition, the clogging of the docket "with visionary or impractical schemes for resuscitation," the petition sets forth a plan which beyond question would deprive the appellant of its property without due process of law. The plan gives appellant some three hundred dollars accrued interest, where it is entitled to more than twelve hundred. Whereas an interest rate to appellant of 6½ per cent. (greater on default) was contracted for, it is given in the future a rate of 2 per cent. Where it was entitled to total payment of its obligation in 1935, it is offered payment at a rate which will leave an amount still owing after a quarter of a century has elapsed since the date of the plan's confirmation. In the meantime, the debtor retains its property, an unsecured creditor is paid in full, and various amounts are awarded to second mortgagees.

In the words of the Supreme Court in the Tennessee Publishing Co. Case, such a plan could not possibly admit "of being confirmed as 'fair and equitable' and as 'feasible.' " See Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 594, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106; Securi-

ty-First Nat. Bank v. Rindge Land & Nav. Co. (C.C.A.9) 85 F.(2d) 557, 561, 107 A. L.R. 1240.

The order appealed from is reversed, and the District Court instructed to dismiss the petition as to appellant and in so far as it affects its mortgage.

Reversed.

HANEY, Circuit Judge (concurring).

I concur in the result solely on the ground that the record does not show that the petition was filed in good faith; I agree that the petition sets forth a "visionary or impracticable scheme for resuscitation." However, I dissent from that part of the opinion stating that "the petition sets forth a plan which beyond question would deprive the appellant of its property without due process of law." While the plan may deprive appellant of its property, I doubt if there is reason for saying that it would do so without due process of law. If carried out pursuant to the bankruptcy act as amended, due process of law is given.