## In re ENTLER.

### ENTLER v. SECURITY–FIRST NAT. BANK OF LOS ANGELES et al.

No. 8713.

Circuit Court of Appeals, Ninth Circuit.

June 29, 1938.

Nathan Newby, Dee Holder, and Charles Ryland Newby, all of Los Angeles, Cal., for appellant.

Farrand & Slosson, George E. Farrand, and Leonard B. Slosson, all of Los Angeles, Cal., for appellees.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from an order of the district court confirming an order of the referee which denied appellant's petition for confirmation of an extension proposal under § 74 of the Bankruptcy Act, 11 U.S. C.A. § 202.

Cora M. Entler, debtor, filed a petition in the district court under the above statute (which provides for relief of noncorporate debtors without bankruptcy adjudication) alleging that she was unable to meet her debts as they matured. She showed assets valued by her considerably in excess of her liabilities. Her only secured creditor is the appellee here, Security-First National Bank of Los Angeles, which held a note secured by a trust deed, the obligation including principal and interest amounting to $18,509.67. Both principal and interest were in default, as were also taxes on the secured property.

The petition was approved as properly filed and all proceedings against the debtor were stayed. The debtor then attempted to secure the consent of a majority of creditors to an extension proposal. Failing to obtain it, she submitted a proposal for extension under § 74(e), 11 U.S.C.A. § 202 (e): "[If] the debtor fails to obtain the acceptance of a majority in number of all creditors whose claims are affected by an extension proposal * * * the debtor may submit a proposal for an extension including a feasible method of financial rehabilitation for the debtor which is for the best interest of all the creditors, including an equitable liquidation for the secured creditors whose claims are affected."

Section 74(g), 11 U.S.C.A. § 202(g) provides: "The court shall confirm the proposal if satisfied that (1) it includes an equitable and feasible method of liquidation for secured creditors whose claims are affected and of financial rehabilitation for the debtor; (2) it is for the best interests of all creditors; (3) that the debtor has not been guilty of any of the acts, or failed to perform any of the duties, which would be a ground for denying his discharge; and (4) the offer and its acceptance are in good faith * * *."

The plan submitted by the debtor was rejected by the referee and the court on the grounds that (1) it was not for the best interest of all the creditors, and (2) "it did not provide for an equitable liquidation for the secured creditor [appellee Security-First National Bank] whose claim was affected thereby". The sole question on this appeal, therefore, is whether the appellant has sustained her burden of proof that this determination of the referee and the district judge was erroneous.

A brief survey of the conditions of the debtor and her proposed plan will demonstrate that such burden has not been sustained. The debtor's petition showed liabilities as follows: The secured note to appellee Security-First National Bank in the principal amount of $15,000, executed June 20, 1931, due June 20, 1934, with interest at 7 percent from date of maturity (by July 1936, the time of the commencement of these proceedings none of the principal had been paid, and unpaid interest had brought the total obligation to $18,509.97); unpaid taxes on the property securing this note, in the sum of $2,200; and an unsecured note to the Bank of America of $3,000. Total liabilities thus amounted to $23,709.67.

For assets, the debtor had (1) $1,250 in cash; (2) a lot and dwelling house occupied by debtor and her husband, which property was security for appellee Bank's deed of trust. Debtor estimated it to be worth $45,000. It was producing no income. (3) Two parcels of income property estimated by debtor to be worth $17,500, and which were producing an income of $90 per month.

In addition to these assets totaling (according to the debtor) over $60,000, and almost three times as much as her liabilities, she stated in her proposed plan of extension that her husband owned property which he would be willing to sell or bor-

710

row on in order to pay debtor's obligations. The husband consented to this plan. However, at the time of the present hearing before the referee the debtor's husband had filed a petition under § 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, on his own behalf.

The plan proposed by the debtor provided first that the time for payment of all indebtedness be postponed to September 23, 1939. During the interim the debtor's husband was to be made trustee of all the property with power to manage, lease, and sell.

The $1,250 cash was to be paid to the trustee, $250 for part payment of $2,200 back taxes on the property covered by the appellee's trust deed and the remainder to back payments of interest on the secured obligation.

The income from all the properties under the control of the trustee was to be paid, first to expenses of administration, including $50 per month compensation to debtor's husband as trustee, next to payments of interest on secured obligations, then to attorney's fees for debtor's attorneys, then to payment of the principal on the secured obligation to the appellee Security-First National Bank, then to unsecured creditors and finally (and somewhat optimistically) "the balance to Cora M. Entler, the debtor herein".

The referee found that there was no showing of income from or funds from the sale of the properties of debtor and her husband sufficient or certain enough to warrant a belief that the appellee Bank herein would be paid by the expiration of the proposed extension period. Inasmuch as the evidence is not set out in the record, save for a two page referee's summary, we cannot review these findings. What does appear from the record and admissions in the brief of appellant fully supports the finding. The only figure as to definite income from the property is $90 per month, a sum obviously insufficient to pay the secured creditor any substantial amount of its claim by September 23, 1939. As to a potential sale of the property or a portion thereof, the debtor admits that her properties are "frozen assets". Nothing in the evidence warrants a hypothesis that they will not continue to be "frozen" for years to come.

■ The statute requires a plan for "equitable liquidation for the secured creditors whose claims are affected". Postponement of payment on a claim already two years overdue when this proceeding was commenced on July 6, 1936, for a period of three years longer, with no assurance of payment even at the end of the three years, is not only a failure of "equitable liquidation"; it is no liquidation at all. Cf. Provident Mutual Life Ins. Co. v. University Evangelical Lutheran Church of Seattle, 9 Cir., 90 F.2d 992.

■ As a further ground for reversal, appellant contends that her liability on the secured note to appellee is based on her accommodation indorsement of her husband's note to the Bank. She argues from this that a stay of proceedings against her husband, which had been granted in response to his petition under § 75, should apply to her as well. We do not pass upon the point of law presented inasmuch as it does not appear from the record that the debtor was an accommodation indorser, or liable to the appellee Bank on the note in any capacity other than principal.

Affirmed.