In re WARE METAL PRODUCTS, Inc.

No. 66350.

District Court, D. Massachusetts.

Dec. 22, 1941.

Charles V. D. Siegel and James H. Mulcare, both of Springfield, Mass., for Ware Metal Products, Inc.

Harry M. Ehrlich, of Springfield, Mass., for Jacob Weiss.

FORD, District Judge.

This matter was heard upon objections to a special master's report. On September 22, 1941, the debtor filed a petition for reorganization under the provisions of Chapter X of the Chandler Act, 11 U.S.C.A. § 501 et seq. The petition was approved as properly filed on the date of filing, the debtor was allowed to continue in possession and operate the business (11 U.S.C.A. § 556), and the date for the first hearing was set for November 10, 1941.

On September 26, 1941, Jacob Weiss, a secured creditor of the debtor, filed a petition to intervene and a motion to dismiss upon two grounds: (1) That the court lacked jurisdiction in that the debtor did not, in accordance with the provisions of Section 128 of the Act, have its principal place of business or its principal assets in this district for the six months preceding the filing of the petition, and (2) that the petition was not filed in good faith. The debtor's original petition was approved at an ex parte hearing, this court being satisfied that its averments, statements of counsel, and financial condition reflected in the balance sheet attached to the petition, constituted a basis upon which the court could make a finding of good faith.

The facts relied upon by the creditor to sustain his motion to dismiss the petition were so complicated and confusing that the court referred the petition to a special master with the direction that he report all the factual evidence involving the question of good faith and, also, make a finding as to whether the petition was filed in good faith. The special master has reported the facts and finds the petition was filed in good faith. The matter now comes to be heard on the report and objections filed thereto by both parties.

The findings of the master, except that the petition was filed in good faith, are adopted as my findings.

The master found, at the outset, that the balance sheet attached to the debtor's petition did not reflect the true financial condition of the corporation. He further found that since February, 1939, the debtor has not carried on any business in this district and since that time has kept no books of account. It appears from the report that on December 7, 1940, the Supreme Court of Massachusetts dissolved the debtor corporation and it was revived upon petition of the debtor on September 15, 1941, a few days before the debtor filed its petition.

The facts further show that Abraham, Julius, and Morris Balaban, the latter two being sons of the former, formerly lived in Bridgeport, Connecticut, and were engaged in the manufacture of ladies hand bags; that their business there was conducted by them as a partnership. In 1938, they came to Ware, Massachusetts, and engaged in the same business under the name of Ware Metal Products Company, Inc. On October 19, 1938, the debtor was incorporated and began the manufacture of metal bags. The corporation was authorized to issue 100 shares of capital stock. Six shares were issued, one each to Abraham, Julius, and Morris Balaban, and three to a Jacob Hart, president of a corporation named Advance Metal Frame Co., Inc., which was a creditor of either Julius, or Morris and Julius Balaban. Originally, in Bridgeport, the Balabans, as partners, had bought machinery to the value of about $5,800 which was used in their business there. It further appeared that the total amount owed on this machinery because of conditional sales agreement and chattel mortgages was $5416. A further mortgage was given on this machinery to another creditor in the amount of $2,000. These mortgages are still outstanding. The master found there was no

evidence that the debtor corporation at any time acquired title to this machinery although it does appear that when it started business it took possession and used this machinery. The debtor, although there was no formal transfer of this machinery to it, on October 19, 1938, mortgaged this machinery to Advance Metal Frame Co., Inc., mentioned above. It further appeared that some time in February, 1939, Advance Metal Frame Co., Inc., took possession of this machinery for the purpose of foreclosure. A sale was attempted, there were no bidders, the plant was closed down and not operated. The plant was reopened twenty weeks later under circumstances later set forth. The mortgagee soon after abandoned possession of the machinery, but the debtor was without cash to do business and it owed debts and taxes amounting to at least $10,000.

The initial difficulty I am confronted with in this case is that I am unable to find any assets owned by the debtor. It does not appear, with any degree of certainty, that it had title to the machinery originally purchased by Balaban partners. All that does appear is that this machinery was used by the debtor during the time it carried on its business. The business of the debtor, it appears from the report, was not resumed after it shut down in February, of 1939, until June 20, 1939, when the creditor who brings this motion came into the picture. On June 20, 1939, he paid to the landlord of the debtor corporation about $500 on account of back rent, and the further sum of $265 to the mortgagee named in the chattel mortgage given by the debtor on February 19, 1938. Before making these payments, on June 6, 1939, he secured an assignment of the mortgage given by the debtor to the Advance Metal Frame Co., Inc., on October 19, 1938. From this time on, the intervening creditor put a large amount of money into the business the Balabans were conducting, but refused to advance any money unless the business was carried on under a new name. In other words, he refused to do business with the Balabans if they continued to conduct the business as a corporation. It was arranged that Bessie Balaban, wife of Morris Balaban, should conduct the business under the name of the Ware Metal Specialties Company (hereinafter called the Specialties Company.) The master found that the intervenor advanced about $123,500 to the Specialties Company. The Specialties Company used its own letterheads, a new rent account with the landlord was opened, and Bessie Balaban was at all times known as the owner of this business except that she took no active part. The rent of the premises occupied was paid by her. The creditor, Weiss, contributed to the business of the Specialties Company a large amount of merchandise and machinery of considerable value. For this he received security. The old machinery of the Balabans was turned over to the Specialties Company and used by the latter in the conduct of its business.

It is the contention of the debtor that it has some interest in or title to the property that Weiss added to the business conducted by the Specialties Company, but what interest it has in this business I am unable to find. The Specialties Company was an entirely different enterprise from that carried on by the debtor corporation. The debtor did not even lend its name to it. What old machinery was used in the conduct of the business of the Specialties Company, as far as the evidence before the master showed, was owned by the Balabans and was never transferred to the debtor corporation.

The debtor has in its balance sheet the item of $46,500 as owing to creditors. This it says it owes to the intervening creditor. But this is not the fact. This money is owing to the intervening creditor by Bessie Balaban, doing business as the Ware Metal Specialties Company. The balance sheet is incorrect in this respect. There is no question that this debt was included in the balance sheet to show that the merchandise and machinery put into the Specialties Company's business by the intervenor was, in fact, put into a business conducted by the debtor. But the facts found by the master, and warranted by the evidence, in no way justified any such conclusion.

It appeared that on or about September 8, 1941, there was owing to the intervening creditor by the Specialties Company somewhere between $45,000 and $60,000. Suit was brought by Weiss, the creditor, against all the Balabans, individually, for this amount. In bringing this suit, the creditor attached the property of the Specialties Company and keepers were put in possession. This precipitated revival of the corporation and the petition for reorganization. The approval of the petition removed the keepers from the property of the Specialties Company, as the debtor claimed it as its own.

The objections filed by the debtor to the master's report concerned mainly the findings of the master that the debtor ceased to do business on February 1, 1939. However, the evidence incontrovertibly justified such a finding and these objections are all overruled. The objections to introduction of evidence are overruled in that I cannot find that the master committed any prejudicial error with respect to any evidence admitted.

■ In deciding the question as to whether the petition was filed in good faith, a court may pass upon the desirability of reorganization. Manati Sugar Co. v. Mock et al., 2 Cir., 75 F.2d 284.

■ What I believe the master found when he believed the debtor's petition was filed in good faith was the debtor filed it with an honest purpose. Assuming it did, that is not enough. As the court said in the case of Tennessee Publishing Co. v. American National Bank et al., 299 U.S. 18, 22, 57 S.Ct. 85, 87, 81 L.Ed. 13: "However honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation". There should at all times be a reasonable possibility for a successful reorganization and when this is not present the petition should be dismissed. First National Bank of Wellston v. Conway Road Estates Co., 8 Cir., 94 F.2d 736; Provident Mut. Life Ins. Co. of Philadelphia v. University Evangelical Lutheran Church of Seattle, 9 Cir., 90 F.2d 992. If a corporation is absolutely insolvent it should not be allowed to file a petition. Brockett et al. v. Winkle Terra Cotta Co., 8 Cir., 81 F.2d 949, 953. In other words, if it appears that it is unreasonable to expect that a plan of reorganization can be effected, it cannot be said it was filed in good faith. Section 146 (3) of the Act. That seems to be the case here.

■ The balance sheet accompanying the petition is not a correct one. There was an attempt to show the corporation had assets which it did not own. An analysis of the history of the debtor does not disclose any assets except a very doubtful claim that some of its property was being used by the Specialties Company in the conduct of its business. On the other hand, its admitted liabilities are far in excess of any possible assets. It appears absolutely insolvent.

Further, it can hardly be said that it had a principal place of business in this district for six months preceding the filing of this petition. It did no business in that period, nor can it be said with reason that its principal assets were here for that period. No court, as I have said before, could say, with any degree of finality, it has any assets.

And, again, in view of the picture presented here, I believe this corporation was really revived for the purpose of staying the suit of this intervening creditor, who was doing business with the Balabans, individually, and preventing final dispossession of the property from the Balabans. What it hopes to secure in further litigation it is difficult to surmise. Under these circumstances, it cannot be said that this petition was filed in good faith. To allow this corporation to be revived to accomplish, even temporarily, what Bessie Balaban, doing business under the name of Ware Metal Specialties Company, could not do individually, that is, rid herself of an attachment, would contravene the purposes of the Bankruptcy Act.

■ It may finally be said that although good faith is not a fact to be alleged in the petition, a secured creditor may urge the debtor's bad faith as ground for dismissal in a motion to dismiss after approval of the petition by the court. See Tennessee Publishing Co. v. American National Bank et al., supra, 299 U.S. page 20, 57 S.Ct. 85, 81 L.Ed. 13; Provident Mut. Life Ins. Co. of Philadelphia v. University Evangelical Lutheran Church of Seattle, supra; and In re Tinkoff, 7 Cir., 85 F.2d 305, certiorari denied, sub. nom. Tinkoff v. Chicago Title & Trust Co. et al., 299 U.S. 611, 57 S.Ct. 314, 81 L.Ed. 450.

The order approving the debtor's petition to reorganize entered on September 22, 1941, is vacated and the petition is dismissed.