**Matter of SHAMROCK AMUSEMENT CORPORATION, a corporation, Bankrupt.**

**No. 41800.**

United States District Court
N. D. California, S. D.
April 25, 1957.

782

Shapro & Rothschild, San Francisco, Cal., for trustee.

Gallagher, Ruffo & Rainville, San Jose, Cal., for bankrupt.

Walter H. Medak, San Francisco, Cal., Paul T. Wolf, San Francisco, Cal. for petitioning creditors.

OLIVER J. CARTER, District Judge.

The Shamrock Amusement Corporation, operating an open air drive-in theatre in San Jose, California, filed a voluntary petition in bankruptcy in June 1953, and was thereafter adjudged a bankrupt. From the time this petition was filed, certain creditors of the bankrupt, who also owned 48.8% of its stock, waged an 18 month unsuccessful fight for the survival of the corporate enterprise. At the outset, this group attempted to secure a dismissal of the bankruptcy proceedings, both in their capacity as creditors and as stockholders. Being unsuccessful there, in March 1954, they caused to be filed a petition for corporate arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. Shortly thereafter the bankruptcy Trustee closed down the theatre operation and made preparation to abandon the premises. Under the terms of the lease held by the corporation, which then had an unexpired term of 16 years, all of the fixtures would become the property of the lessors. The lease contained a provision permitting the lessors to terminate the lease in the event of bankruptcy.

To keep the Trustee in possession of the property, these creditors entered into an agreement with him, under which they paid to the Trustee the monthly rental and other maintenance expenses, amounting to approximately $900 per month. The lessors had served formal notice of their intention to terminate the lease under the bankruptcy clause, but it appears that they nevertheless represented to the creditors that a lease could be had in the event a successful plan could be worked out, including some provision for payment of attorney's fees incurred by the lessors because of the bankruptcy proceeding.

On August 13, 1954, the Referee orally ruled that the Chapter XI petition would be dismissed. On August 25, the creditors then filed a Chapter X petition for the reorganization of the corporation. The evidence shows that their plan of reorganization was based upon a proposal by an organization called the Affiliated Theatres, Inc., to bring new capital into the enterprise and installation of the Cinemascope process, in exchange for which Affiliated Theatres would take a controlling interest of capital stock. Simultaneously the petitioning creditors terminated their payments to the Trustee for maintenance expenses, but secured an order for a temporary stay of the bankruptcy proceedings, which restrained the Trustee from relinquishing possession of the premises to the lessors. In November 1954, this restraining order was modified so as to permit the Trustee to relinquish possession of the property to the lessors, and in February 1955, this Court dismissed the Chapter X petition upon the recommendation of the Trustee, and upon his finding that the petition was filed in bad faith within the meaning of Section 146(3) of the Bankruptcy Act, in that it was unreasonable to expect that the preferred, or any, plan of reorganization could be effected.

■ Subsequently the Trustee moved this Court for an order assessing the petitioning creditors for the rental and maintenance expenses incurred during his three months of forced possession under the restraining order. In addition, both the Trustee and the bankrupt moved to have the attorney's fees which they incurred in resisting the Chapter X petition, assessed against the petitioning creditors.

The Court has previously ordered the submission of briefs upon the question of whether it has power, under the Bankruptcy Act, to assess these proposed expenses and attorney's fees against the petitioning creditors. Upon determining that such power did exist, a further hearing was had on the merits, to determine whether the petitioning creditors instituted the Chapter X proceeding in bad faith as that term is normally understood, as distinguished from statutory bad faith under Chapter X, 11 U.S.C.A. § 501 et seq. The Referee's finding of statutory bad faith under Section 146(3) goes to the likelihood that the plan will succeed. As stated in In re Ware Metal Products, D.C.Mass.1941, 42 F.Supp. 538, 541:

> "What I believe the master found when he believed the debtor's petition was filed in good faith was the debtor filed it with an honest purpose. Assuming it did, that is not enough. As the court said in the case of Tennessee Pub. Co. v. American Nat. Bank, 299 U.S. 18, 22, 57 S.Ct. 85, 87, 81 L.Ed. 13 * * *. 'However honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation'. There should at all times be a reasonable possibility for a successful reorganization and when this is not present the petition should be dismissed".

It is conceded by all parties that the presence of statutory bad faith would not, per se, warrant the taxing of these expenses against the petitioning creditors.

■ Congress has enacted comprehensive provisions for costs and expenses incurred in corporate reorganizations, in Sections 241–248, of Chapter X of the Bankruptcy Act, 11 U.S.C.A. §§ 641–648. The judge is empowered to make allowances out of the estate for compensation and reimbursement for services rendered and expenses incurred by any of the several parties enumerated. Included as being eligible for these allowances are petitioning creditors and their attorneys. These provisions, contrary to the former provisions in Section 77B of the Bankruptcy Act, permit compensation and reimbursements to be made to the several participants even though the reorganization fails; indeed, where the Chapter X petition is successfully contested at the outset, as was done in the instant proceeding, the judge is empowered to make allowances for compensation and reimbursements.

Congress had a purpose in enacting these provisions for allowances where reorganization fails. In 6 Collier on Bankruptcy 4571, a footnote containing an extract from the Analysis of H.R. 12889, 74th Cong., 2d Sess. (1936) 76, reads:

> "We have built up the provisions to make it clear that allowances may be made for services rendered or disbursements incurred in a proceeding under this subsection, even though the plan may not be confirmed, but a liquidation directed or the proceeding dismissed. Such compensation and reimbursement should of course not be made to depend upon the contingency of a confirmation. If it is to be expected that responsible parties are to render effective service in a reorganization proceeding, provision must be made for reasonable compensation to them, regardless of the outcome of the proceeding. To do otherwise would invite into the proceedings less efficient and responsible persons."

Pertinent discussion of these provisions is also found in Smith v. Central Trust Co., 4 Cir., 1944, 139 F.2d 733, 736. A voluntary petition for a Chapter X pe-

tition had been dismissed because statutory bad faith was present, and also for lack of jurisdiction. The Trustee, its attorneys, and the debtor's attorneys applied for compensation out of the estate for their pre-dismissal services. It was argued that the court could not make such allowances under the Chapter X provisions when it did not have jurisdiction to entertain the original petition. In holding that it could make the allowances applied for, the court said:

"We think this course should be followed in the bankruptcy court, especially in reorganization proceedings under Chapter X where Congress has shown an intention to encourage the institution of rehabilitation proceedings for the reconstruction of failing businesses. * * * Otherwise the free approach to the court by those who in good faith seek the rehabilitation of the debtor will be impeded by the fear that they will be required to pay the expenses of the proceeding if the court ultimately concludes upon disputed facts that it lacks the jurisdiction to carry on.

"That Congress intended to broaden the scope of corporate reorganization in the federal court and to encourage the institution of proceedings under Chapter X is shown by divers statutory provisions. * * * The creditors and their attorneys and the trustee and his attorney are encouraged to participate in the proceedings by the provision that the judge may allow reimbursement for their reasonable costs and expenses, § 241, 11 U.S.C.A. § 641; and even though the proceeding is dismissed the judge may allow reasonable compensation for services rendered and costs incurred while the proceeding is pending, §§ 246 and 259, 11 U.S.C.A. §§ 646 and 659."

The motions before this Court do not seek any allowance out of the estate; instead, the Trustee and the bankrupt ask that the expenses they incurred because of the Chapter X petition be assessed against the petitioning creditors. In view of the express and unequivocal purpose of Congress to encourage proceedings for corporate rehabilitation, this Court is not free to penalize those who institute such a proceeding unless theirs was not a bona fide attempt to reorganize the corporation. Congress did not, of course, intend to invite or encourage attempts which were devoid of any possibility of success, or which were motivated by spite or other evil purpose. The judge should, consistent with the purposes of the statute, deter any fiasco attempts at reorganization by assessing against the instigators the needless expense they have caused.

But here the Court is convinced that these petitioning creditors were making a bona fide attempt to reorganize the corporation. They were equipped with a proposal from outside interests to bring new capital into the enterprise. Their stumbling block was the vitally important lease of the property on which the theatre was situated. The Referee found that the plan was without merit because the lessors had already lawfully terminated the lease. But there is evidence showing that the petitioning creditors had reason to believe that the lease problem could be solved. That was obviously the case four months before the Chapter X petition was filed, when they agreed to pay the Trustee the rental and maintenance expenses on the closed theatre in order to keep him in possession. Between that time and the time they filed the Chapter X petition, it appears that they negotiated with the lessors on several occasions respecting the possibility of a continued lease. The lessors, who evidently did a great deal of shilly-shallying in their position here, on these occasions did lead the group to believe that a lease could be had if the theatre operation could be put back on its feet.

In light of the heavy losses the petitioning creditors would sustain, both as shareholders and as creditors, unless some plan for salvaging the enterprise was developed, this Court is not going to assess them with the proposed costs from the mere fact that a continued lease was

still open to doubt. To do so would be to erect unwarranted barriers to the Congressional policy of encouraging proceedings for corporate rehabilitation. The circumstances here might weigh differently if the petitioning creditors were trying to recover their expenses out of the estate, but it is here decided that they do not warrant assessment of the expenses of the Trustee and bankrupt against the petitioning creditors.

It is ordered that the motions for the taxing of the proposed costs and expenses are, and each of them is hereby denied.