**In re Jonathan Wilbur ZAHNISER, Social Security No. 521–48–1927, and Alice Mae Zahniser, Social Security No. 523–44–6927, Debtors.**

**Bankruptcy No. 85 B 06947 G.**

United States Bankruptcy Court, D. Colorado.

March 17, 1986.

Steven R. Rider of Rider & Woulf, P.C., Aurora, Colo., for Federal Land Bank of Wichita.

Victor Roushar of Malone & Brown, P.C., Denver, Colo., for Southwest Production Credit Ass'n.

John W. Overholser, Overholser & Slee, P.C., Montrose, Colo., for Elbert Harris.

William D. Nelsch, Denver, Colo., for debtors.

### FINDINGS, CONCLUSIONS AND ORDER ON MOTION TO DISMISS DEBTORS' CHAPTER 11 CASE

PATRICIA ANN CLARK, Bankruptcy Judge.

This matter comes before the Court on the motion of Federal Land Bank of Wichita to dismiss this case pursuant to 11 U.S.C. § 109(f). The motion was supported by Elbert Harris and Southwest Production Credit Association. Additionally, Southwest Production Credit Association asserts several alternative bases for dismissal. First, it avers that there is a continuing loss to the debtors' estate with no reasonable likelihood of rehabilitation. Second, Southwest Production Credit Association alleges that the debtors will be unable to effectuate a plan of reorganization under Chapter 11. Third, it asserts that the filing of this petition has caused and will continue to cause unreasonable prejudicial delay to the creditors. Further, it contends that debtors have not filed this bankruptcy petition in good faith. Upon conclusion of the hearing in this matter, the Court makes the following finds of fact and determination.

The debtors, Jonathan and Alice Zahniser, first filed a voluntary petition for reorganization under Chapter 11 on April 5, 1984. On June 6, 1985, this petition was dismissed by the Court pursuant to 11 U.S.C. § 1112(b)(1). After filing an appeal of the first dismissal, the Zahnisers, on

November 13, 1985, filed a new petition for relief under Chapter 11. The pending appeal was subsequently dismissed as moot.

The movants in this case, Elbert Harris (Harris), Federal Land Bank of Wichita (FLB) and Southwest Production Credit Association (PCA), are secured creditors with liens on either Zahnisers' real estate or various items of personalty. Harris is the holder of a promissory note made by Zahnisers in 1979. The note is secured by a first deed of trust covering Zahnisers' property described in their schedules as Tract 2.[1] The Zahnisers' disclosure statement lists the delinquent amount due Harris to be $32,053.88 plus interest accruing at $20.05 per diem with a current principal balance of approximately $46,657.

FLB loaned the Zahnisers $150,000 in 1981. This loan was evidenced by a note and secured by a deed of trust on Tract 1. The past amount due on this note is $47,327.80 plus interest which is accruing daily. The current principal balance is approximately $146,967.

PCA is a creditor herein based upon a renewal note dated October 18, 1983. PCA's claim is principally secured by the livestock and equipment of the Zahnisers. Although the Zahnisers may dispute the allowance of all or part of this claim, the entire claim of approximately $520,179 is provided for in the plan.

Although the movants consist of three major secured creditors, the Zahnisers list other secured and unsecured debts. The summary of debts and property in the schedules filed by the Zahnisers on November 13, 1985 list taxes owing of $1,662; secured claims of $918,683.27; and unsecured debts of $36,950.93 for total scheduled liabilities of $957,296.20. The same summary lists real property assets at a fair market value, as of a 1984 appraisal, of $827,000; farming supplies and implements of $82,000 and livestock of $496,000 for total assets of $1,493,950.

The Zahnisers are farmers and raise sheep in Montrose, Colorado. Their operation consists primarily of breeding sheep for the sale of wool and for consumption by the American public. They also grow wheat and barley as winter feed for the sheep. In order to increase their herd, the Zahnisers have been breeding their sheep with sheep called Polypay. A Polypay is a distinct breed due to its ability to produce slightly lighter lambs in greater numbers. Through this breeding program, the size of their herd has increased from approximately 3,700 head on the date of the original filing to approximately 6,000 head as of the second filing date. The Zahnisers currently value their livestock at $496,000 with the value of the herd on the date of the original filing being $190,000.

The evidence at the hearing revealed that, notwithstanding occasional price fluctuations, the market price for sheep has steadily increased. Mr. Zahniser testified that the most recent price he received for lamb was 70.50 cents per pound. The success of the plan is based, in part, on the sales price being at least 70 cents per pound for lambs in 1986 with a 4 percent increase in each subsequent year. An additional basis for income under the plan is the sale of wool under the federal government's wool incentive program. The Zahnisers anticipate adding $74,000 per year to their income from the sale of wool.

With their plan and disclosure statement, the Zahnisers submitted cash flow projections for the life of the plan, which is eight years. The cash flow projections reflect actual cash positions for the first month of operation as debtor-in-possession under this plan. The monthly and yearly cash flow projection sheets show beginning balances, additions for income from sales of livestock and other sources, deductions for operating expenses, deductions for debt service and ending cash balance.

For 1986, the operating expenses are estimated at $231,715, of which $6,894 is set

---

1. Zahnisers have an interest in three tracts of land. Tract 1 consists of 40 acres. Tract 2 consists of 110 acres. Zahnisers have a two-fifths interest in the third tract of land consisting of 2,140 acres.

aside for family living. The Zahnisers project their annual income for 1986 will reach $446,936,[2] of which $286,500 is from the sale of lambs. The income figures have been increased at a rate of 4 percent per annum and the operating expense figures have been increased at a rate of 6 percent per annum. The Zahnisers estimate that payments required pursuant to their plan of reorganization for retirement of secured debt will be $160,897. The debt service under the plan for each year is expressed as 36 percent of gross receipts.

The first issue presented is whether the Zahnisers, who had their prior Chapter 11 case dismissed, are eligible to be debtors under 11 U.S.C. § 109(f). Section 109(f) is one of the several amendments enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984. It is designated to control abusive repetitive filings. *See* Statement of Senator Dole in 130 Cong. Rec. S8894 (daily ed. June 29, 1984). In relevant part, the section provides that "no individual may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if ... the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case ... or, the debtor requested and obtained voluntary dismissal of the case...."

█ In the present case Zahnisers' original petition was dismissed by the Court on June 6, 1985, approximately 160 days before the second petition was filed. In its

Order, the Court made no findings of "willful failure to obey an order of the court."[3] Instead it found that because of land values and projected income, there was no reasonable probability of successful rehabilitation. The Court also found that there would be a continuing loss or diminution of the estate. Such an order does not make the Zahnisers ineligible to be a debtor under Section 109(f), because of willful failure to obey a court order. *Compare In re Patel,* 48 B.R. 418 (Bankr.M.D.Ala.1985) (where debtor, who had two prior Chapter 13 plans dismissed for failure to pay under confirmed plans, was not eligible to be a debtor within 180 days of prior dismissal).

█ Further, the dismissal was not based on the Zahnisers' failure to appear before the Court in proper prosecution of the case. Although the Court commented on counsel's inadequate representation of the Zahnisers, its decision was premised, as above noted, on a finding of a continuing loss to the estate and the improbability of a successful reorganization. Finally, it is clear that the June 6, 1985 dismissal was not voluntary but based upon a motion to dismiss by PCA. In fact, the Zahnisers pursued an appeal of that dismissal. Therefore, this Court finds no basis for the allegation that Section 109(f) bars the filing of this petition.

Movants herein assert four additional grounds for dismissal of this case: (1) bad faith;[4] (2) continuing loss or diminution of the estate and absence of a reasonable likelihood of rehabilitation; (3) inability to

---

**2.** The Zahnisers begin their 1986 cash flow projections with an $82,000 carryover from lamb sales from previous years. Because PCA has a security interest in the livestock, there is a dispute as to the ownership of these funds. This Court does not have before it the resolution of that dispute but does note that the $82,000 is used in the Zahnisers' plan projections.

**3.** The Code does not define "willful" but it is reasonable to assume that Congress intended that the term have its usual legal meaning. Willful is generally used to describe conduct which is intentional, knowing and voluntary. *See, e.g., In re Ellis,* 48 B.R. 178 (Bankr.E.D.N.Y. 1985).

**4.** 11 U.S.C. § 1112(b) specifies nine statutory grounds for dismissing a plan. In the present case, movants assert three of those nine grounds as the bases for dismissal. In addition, movants contend that this Court should dismiss this petition for lack of good faith. The legislative history of the Code, widely cited in recent case law, clearly establishes that a lack of good faith constitutes sufficient cause for dismissal regardless of whether it is specifically articulated in Section 1112(b). *See, e.g., In re Albany Partners, Ltd.,* 749 F.2d 670 (11th Cir.1984).

effectuate a plan; and (4) unreasonable prejudicial delay.

■ The facts required to mandate dismissal based upon lack of good faith are as varied as the number of cases. *See, e.g., In re Coastal Cable T.V., Inc.,* 709 F.2d 762 (1st Cir.1983); *Furness v. Lilienfeld,* 35 B.R. 1006 (D.Md.1983); *In re Alison Corp.,* 9 B.R. 827 (Bankr.S.D.Cal.1981); *In re Nancant,* 8 B.R. 1005 (Bankr.D.Ma. 1981); *In re Dutch Flat Investment Co.,* 6 B.R. 470 (Bankr.N.D.Cal.1980). A common thread is the requirement that the debtor must owe real "legitimate" debts, *In re Coastal Cable T.V., Inc.,* 709 F.2d at 765, to "real creditors," *Furness v. Lilienfeld,* 35 B.R. at 1013, constituting an "unsecured creditor body." *In re Alison Corp.,* 9 B.R. at 829. Further, there must be an established "ongoing business." *In re Dutch Flat Investment Co.,* 6 B.R. at 471, with more than a "vague plan for the development of a sole asset." *In re Nancant, Inc.,* 8 B.R. at 1009. If it is apparent that the purpose is not to delay or defeat creditors but rather to put an end to delays, to administrative expenses and to invoke the bankruptcy laws in the spirit indicated by Congress, namely, to attempt to effect a speedy, efficient reorganization, good faith cannot be denied. *In re Leob Apartments,* 89 F.2d 461 (7th Cir.1937).

■ The record in this case does not support a finding that the Zahnisers intend to abuse the judicial process and the purposes of the reorganization provisions. This Court does not agree with movants' contention that the Zahnisers have filed the within bankruptcy for the sole purpose of delaying foreclosures. The Zahnisers have been in the farming business for over 30 years. Testimony revealed that the Zahnisers intend to use Chapter 11 to reorganize their financial activities and continue in the sheep breeding business. During the pendency of these proceedings, Zahnisers' operation has shown substantial activity with an increase in their herd.

In addition to Zahnisers' intent to continue in the farming business, they have sufficiently shown the capacity and resources to do so. Projecting future income and expenses of an extensive farming operation such as Zahnisers' cannot be an exact science. This Court has heard evidence concerning market prices of lamb and the earning capacity of the debtor. While it is true that market prices may fluctuate and the Zahnisers may be faced with emergency expenses, this Court does not find that the Zahnisers' plan to reorganize is too "visionary, impractical, and speculative," as movants contend, to survive the good faith test.

Moreover, it does not appear that this plan, as movants contend, is "simply a rehash" of the plan dismissed last summer and, therefore, a bad faith attempt at reorganization. The increased sheep herd constitutes a bona fide change in circumstances between the filing of the original and subsequent plan. *See In re Johnson,* 708 F.2d 865 (2d Cir.1983) (reversing a dismissal of Chapter 13 on good faith grounds by reason of failure of bankruptcy judge to determine whether there was a bona fide change in circumstances from time of filing of the prior Chapter 13). Also, the new plan makes substantial changes in the provisions curing defaults and reinstating original contract terms. For example, FLB was to be paid over a period of 30 years under the terms of the original plan. The current plan lasts for only eight years and reinstates FLB's original contract terms at the end of that period. Further, the Farmer's Home Administration's claim is reamortized under the current plan.[5] Additionally, distributions under the current plan are made semi-annually, as opposed to monthly, which more accurately reflects the seasonal nature of Zahnisers' operation. In light of the preceding factors, dismissal of the plan for lack of good faith is inappropriate.

■ An alternative ground for dismissing this case is "continuing loss to or diminution of the estate and absence of a rea-

---

**5.** The Farmer's Home Administration is listed as a secured creditor in Zahnisers' schedules.

sonable likelihood of rehabilitation" under Section 1112(b)(1). The burden of showing continuing loss or diminution to the estate is on the creditor seeking relief. *In re Alves Photo Service, Inc.*, 6 B.R. 690 (Bankr.D.Mass.1980).

A guideline for the Court in determining whether a continuing loss exists has been suggested as follows:

Obviously, if the debtor has a negative cash flow after entry of the order for relief in the chapter 11 case, the first of two elements of section 1112(b)(1) is satisfied. Section 1112(b)(1) does not, however, specify that only cash losses are to be considered. Although the debtor may have a positive cash flow, the court should consider whether the debtor is suffering a loss by reason of actual depreciation in the value of property of the estate. The continuing loss or diminution standard set forth in section 1112(b)(1) requires the court to consider depreciation of assets in the economic, rather than accounting sense. A debtor which is operating at a loss according to generally accepted accounting principles may not fall within the 'continuing loss' or 'diminution of the estate' standards if it can be established that the value of the debtor's assets is appreciating rather than depreciating.

5 *Collier on Bankruptcy,* ¶ 1112.03[2][c][i] (15th ed. 1979).

██ Movants offered no testimony at the February 10, 1986 hearing to show that the values of the properties of the estate were depreciating. Therefore, this Court must look toward Zahnisers' cash flow. The movants place much reliance on the testimony of Dan Briskey, an expert in financing sheep ranches in northwest Colorado, to prove that the Zahnisers' operation is not succeeding and will not succeed. Although Briskey has not seen the Zahnisers' operation, he relied on the fluctuation of sheep prices and the extent of Zahnisers' debt to conclude that the reorganization would fail. Briskey's projections do not sufficiently prove to the Court that the Zahnisers will be operating the estate at a

loss during their reorganization. No additional testimony was presented which adequately supports a finding of a continuing loss to the estate during the life of the plan. Admittedly the Zahnisers begin their cash flow projections with funds of disputed ownership. In order to find that the projections indicate a negative cash flow, this Court must assume that the Zahnisers have no ownership rights in or rights to use of the $82,000 in dispute. Because of the present posture of the case, this Court cannot hold that the $82,000 should be omitted from the projections nor find that the Zahnisers are operating and will operate with a negative cash flow. As a result, the movants have failed to meet their burden of proving a continuing loss or diminution to the estate.

██ Even if movants had proven depreciation of the property or negative cash flow, those elements are not sufficient grounds for refusal in and of themselves. The requirement of an "absence of reasonable likelihood of rehabilitation" must also be proved. Rehabilitation, as used in Section 1112(b)(1) has been defined to mean "to put back in good condition; re-establish on a firm, sound basis." 5 *Collier on Bankruptcy,* ¶ 1112.03[2][c][i] (15th ed. 1979). While a debtor should have a fair opportunity to reorganize, such opportunity must be balanced against protection of creditors' interests. When visionary schemes for reorganization entail significant risks to creditors without any reasonable probability that the debtor can successfully rehabilitate, dismissal is generally in order. *Tennessee Publishing Co. v. American Nat'l. Bank,* 299 U.S. 18, 57 S.Ct. 85, 81 L.Ed. 13 (1936).

██ As previously discussed, this Court does not find that the Zahnisers are proposing a "visionary scheme" under the protections of the Bankruptcy Code. The Zahnisers have proposed a plan which does not need substantial financing to make the operation work. The cash flow projections indicate that the operation will be capable of servicing all the secured debt plus satisfying payments to unsecured creditors.

The projections relating to income and expenses are not so inconsistent with past performance to indicate that there is no possibility that these projections will be met. The Zahnisers have also allotted money for repairs and other contingencies under the plan. Based on these factors, this Court finds that there is at least a reasonable probability that the Zahnisers will be able to reorganize. *See In the Matter of Maplewood Poultry Co.*, 2 B.R. 545 (Bankr.D.Me.1980) (only when reorganization is no longer a realistic and viable undertaking should the debtor be removed from the cover of the reorganization court). Therefore, movants have not met their burden of proof under Section 1112(b)(1).

■ Another ground for dismissal under Section 1112(b) is inability to effectuate a plan. Movants contend that there is no indication that the Zahnisers will be able to obtain a plan which would be acceptable to the creditors and the bankruptcy court. First, movants allege that the Zahnisers cannot possibly effectuate a plan because creditors are unalterably opposed to it. Such a statement of opposition by creditors at the outset of a rehabilitation case, however, is hardly dispositive. Opposition of one or more classes of creditors does not in and of itself constitute inability to effectuate a plan, since a plan may be confirmed notwithstanding such opposition. *See Matter of Karl Neise, Inc.*, 16 B.R. 602 (Bankr. S.D.Fla.1981).[6]

As more specific grounds for dismissal under Section 1112(b)(2), FLB asserts that even if other creditors accept the plan, it will not. Since FLB is an impaired class under the plan, it contends that the plan cannot be confirmed over its objection because the plan is not in accordance with the provisions of Section 1129(b), the so-called "cram-down" provisions. As a result, FLB asserts that the Zahnisers' petition should be dismissed.

■ Although Section 1112(b)(2) permits the court to dismiss a Chapter 11 case if the court determines that it is unreasonable to expect that a plan can be confirmed, this Court is not convinced that FLB's Section 1129(b) argument is properly presented on this motion to dismiss. This Court questions whether it may determine the issue at this juncture for several reasons. First, it is clear that the proponent of a reorganization plan which proposes to cram down an impaired class must make a specific request before a bankruptcy court will consider the proposed cram-down. *See* 124 *Cong.Rec.* H–11104 (1978), 124 Cong.Rec. S17420 (1978) ("Paragraph (1) makes clear that the alternative confirmation standard, referred to as 'cramdown,' will be called into play only on the request of the proponent of the plan.") The Zahnisers have not yet requested that this Court consider the proposed cram-down.

■ Second, because no testimony on value of the collateral was presented at the hearing, this Court cannot determine the extent of FLB's secured status. If FLB is in fact under secured, it must then make a Section 1111(b)(2) election. Without knowing if Section 1111(b)(2) applies, this Court is not in a position to decide whether the requirements of Section 1129(b) are met. *See* 5 *Collier on Bankruptcy,* ¶ 1129.03 (for an explanation of the different requirements of Section 1129(b) if Section 1111(b)(2) applies). Because of the present posture of this case, FLB's motion to dismiss based upon the requirements of Section 1129(b) seems premature.

■ Further, FLB requests that this Court dismiss the Zahnisers' petition because their proposed plan fails to comply with requirements enumerated in Section 1129(b). Section 1129(b) sets forth conditions to confirmation which must be met if an impaired class does not accept the plan. If such conditions are not met, this Court is required to deny confirmation, not dismiss the petition. Debtors then may be given

---

**6.** In order to confirm a plan, there must be affirmative acceptance by at least one impaired class of creditors to be determined without votes of any insiders in the class. Section 1129(a)(10). Movants have not proven that other impaired classes not participating in this motion will not approve the plan.

an opportunity to modify the plan or file a new plan. *See* Section 1112(b)(5). (Denial of confirmation of *every* proposed plan and denial of request for additional time to modify plan as ground for dismissal.) Since FLB has not alleged that the plan cannot be readily modified to provide FLB with its indubitable equivalent, this Court will not dismiss Zahnisers' petition under Section 1112(b) based upon a confirmation standard. *See, e.g., In re Landmark Plaza Park,* 7 B.R. 653, 6 B.C.D. 1312 (Bankr. D.N.J.1980) (when debtor's plan fails to meet confirmation requirements of Section 1129(b), plan cannot be confirmed but entire petition is not dismissed).

 Moreover, this Court finds that FLB has not met its burden of proof for dismissal based upon noncompliance with the requirements of Section 1129(b). FLB specifically contends that it will not be given its "indubitable equivalent" under the plan, yet fails to set forth any factual basis for that contention. Apparently FLB contends that it should be paid a higher rate of interest under the plan. This Court was not presented with any testimony concerning the appropriate interest rate to be paid and, as previously discussed, has no evidence concerning the value of the collateral in question. Without this evidence, the Court cannot possibly determine whether FLB's contention that the plan does not provide it within an "indubitable equivalent" has any basis in fact. *See, e.g., In re Monnier Brothers,* 755 F.2d 1336, 12 C.B. C.2d 323 (8th Cir.1985); *In re Adamson Co., Inc.,* 42 B.R. 169 (Bankr.E.D.Va.1984); and *In re Loveridge Machine and Tool Co.,* 36 B.R. 159, 9 C.B.C.2d 1329 (Bankr.D. Utah 1983).

Finally, Section 1112(b)(3) allows for dismissal of a case for "unreasonable delay that is prejudicial to creditors." PCA contends that allowing the Zahnisers to file a Chapter 11 plan after their previous case was dismissed causes unreasonable prejudicial delay to creditors. Thus, PCA contends, the Zahnisers present case should be dismissed.

 Mere participation in prior reorganization proceedings which were dis-

missed does not bar subsequent relief. If interests of the parties can be best served in the new proceeding, the subsequent reorganization is not barred. *See In re Embassy Co.,* 58 F.Supp. 1004 (D.C.Mo.1945). In the present case, the Zahnisers have filed a new plan which differs from the prior proceeding. Although their prior case was dismissed, it was dismissed without prejudice to the Zahnisers' right to refile. During the pendency of this proceeding, the Zahnisers have complied with the Court's order to file a plan by January 2, 1986, only two months after this petition was filed. The Zahnisers have also filed their disclosure statement and do not appear to be using any delaying tactics. As a result, this Court does not find that the Zahnisers' decision to file a new proceeding within five months after their original proceeding was dismissed constitutes unreasonable delay under Section 1112(b)(3).

Accordingly, it is ORDERED that the application of Federal Land Bank of Wichita, Southwest Production Credit Association and Elbert Harris to dismiss these Chapter 11 proceedings is denied without prejudice to their filing a renewed application at such time as the facts and circumstances might warrant.