## In re 1688 MILWAUKEE CORPORATION.

### LEVY et al. v. 1688 MILWAUKEE CORPORATION et al.

#### No. 6476.

Circuit Court of Appeals, Seventh Circuit.

Oct. 20, 1938.

Rehearing Denied Nov. 29, 1938.

S. B. Rosenzweig, of Chicago, Ill., for appellants.

I. E. Ferguson, Ben I. Greenebaum, Jr., Homer Kripke, and Donald J. DeWolfe, all of Chicago, Ill., for appellees.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from an order of November 8, 1937, confirming a proposed plan of reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207.

Richard Tennerstedt was the owner of certain real estate on which was located a gasoline station and garage. In May, 1933, a mortgage foreclosure was instituted in the State Court of Cook County upon the property in question in the amount of $30,000, and on March 18, 1937, a decree of foreclosure and sale was entered finding the debt due on said mortgage to be $39,007.97, together with interest and costs of suit in the amount of $1,315.55. The unpaid taxes, exclusive of penalties from the year 1928 to 1935 aggregated $5,200, which, together with interest and penalties to the date of the order appealed from amounted to practically $9,000. It will thus be seen that the total liens were approximately $50,000. The property was rented and according to appellant, produced a net income of $462 per year. Appellee, however, arrives at a figure of $600 per annum as the minimum net income. The property had an appraised value of $20,285, but $15,000 was the best offer obtainable. On June 15, 1937, the debtor herein was incorporated for the express purpose of seeking benefits provided by Section 77B.

The instant proceedings were filed on July 22, 1937 and title to the real estate conveyed to the recently organized corporation. At about the same time the plan of reorganization under attack was proposed. The plan provides that the debtor shall be authorized to issue 330 shares of common stock; three hundred shares (or 91%) to the First Mortgage Bondholders on the basis of one share of each $100 per par value of bonds and 30 shares or (9%) to Tennerstedt, the original debtor.

The accrued taxes, the expenses of the foreclosure proceedings and the reorganization are to be paid from a loan to be obtained by the reorganized corporation. The proposed plan was consented to by

more than 66⅔% of the First Mortgage Bondholders through a committee authorized to act. Appellants who objected to the proposed plan were owners of First Mortgage Bonds in the sum of $1,500.

While there are other assignments of error, there is only one necessary for us to consider and that is, was the plan feasible and filed in good faith? If this question is answered in the negative, it should not have been confirmed. The duty of the District Court in such a situation is discussed in Tennessee Publishing Company v. American National Bank et al., 299 U.S. 18, 57 S.Ct. 85, 81 L.Ed. 13, wherein it is said on page 22, 57 S.Ct. on page 87:

"Nor do we need to inquire as to the precise limits of the concept of 'good faith' as required by section 77B [11 U.S.C.A. § 207]. Whatever these limits may be, the statute clearly contemplates the submission of a plan of reorganization which admits of being confirmed as 'fair and equitable' and as 'feasible.' However honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impracticable schemes for resuscitation. Sub-section (f) of section 77B (11 U.S.C.A. § 207(f) provides for the confirmation of a plan only if the District Judge is satisfied 'that (1) it is fair and equitable and does not discriminate unfairly in favor of any class of creditors or stockholders, and is feasible.' These are prime conditions. Unless the District Judge finds that the plan has these qualities, he need go no further. Unless he so finds, he has no authority to proceed."

After a careful study of the record, we are unable to conceive upon what theory there is the slightest chance of rehabilitation on the part of the debtor. In oral argument there was advanced the somewhat novel theory that the plan would forestall a sale of the property until such time as a buyer might be found willing to pay a price greater than that which had been offered. We do not believe such a purpose is within the purview of the Statute. Conceding the debtor has a net income of $600 per annum, as claimed by appellee, it would require all of such for a period of fifteen years to pay off the past due taxes, including interest and penalties thereon. Appellee contends this income is such that the stockholders might expect to be paid a dividend, but this argument ignores past due taxes and related expenses which it is obvious must first be cared for. It is claimed that non-confirmation of the plan means liquidation for the debtor and disaster for the bondholders. Assuming this to be true, it could be of no benefit to either to postpone this evil day so certain to follow if this plan be confirmed. Notwithstanding the weight which we attach to the decision of the Court below in a matter of this character, we are forced to the conclusion that the proposed plan is untenable and visionary, rather than feasible.

Our attention is called to holdings of this Court,[1] in passing upon the questions of "good faith" and "feasibility," wherein importance has been attached to the fact that the requisite number of interested parties have consented to the plan. Persuasive as this argument may be, it is not controlling and must give way in face of actualities as unmistakable as we find in the instant case.

The order appealed from is reversed.

---

[1] In re Loeb Apts., Inc., 7 Cir., 89 F.2d 461; In re A. C. Hotel Co., 7 Cir., 93 F.2d 841.