**788**

In The Matter of **SKYSWEEPER, INC.,** an Illinois corporation, Debtor.

No. 61 B 4412.

United States District Court
N. D. Illinois, E. D.
Jan. 4, 1962.

Michael Gesas and Leonard Gesas, Walter C. Wellman, Chicago, Ill., for debtor.

A. L. Schapiro, Schapiro & Fuchs, Chicago, Ill., for objecting creditor, Essex Wire Corp.

Robert B. Chatz, Chatz & Chatz, Samuel Berke, Chicago, Ill., for receiver.

Louis I. Kessler, Chicago, Ill., for Creditors' Committee.

ROBSON, District Judge.

This action was instituted on April 20, 1961, when the debtor herein, Skysweeper, Inc., filed its voluntary petition under Chapter XI of the Bankruptcy Act (11 U.S.C.A. § 701 et seq.). A proposed arrangement was subsequently filed whereby the general unsecured creditors could elect to take 25% of the amount of their claims in cash, in full satisfaction thereof or 100% of the amount of the claims payable (1) 10% in cash upon confirmation of the arrangement, and (2) nine non-interest bearing notes, each valued at 10% of the amount of the debt, payable quarterly, commencing at a time six months after confirmation.

The proposed arrangement shows that the general unsecured liabilities, excluding certain subordinated notes, totaled $102,019.17. Of the 86 creditors who accepted the arrangement, only 20, with claims aggregating $6,747.82, elected to take 25% of their claims in full payment thereof, resulting in debtor's total liability being reduced only $6,747.82.

One of the creditors, Essex Wire Corporation, filed objections to confirmation of the arrangement alleging that the arrangement was unfeasible and not in the best interests of the creditors, in that:

"The inadequacy of Debtor's capital structure, the fact that no further capital is to be put into Debtor, Debtor's history of decreasing sales, the pattern of improper withdrawals from Debtor made by Joesph A. Kovac, holder of a 91% interest in Debtor, and the increase of more than $110,000 in Debtor's deficit since said individual became the controlling shareholder in 1957 all demonstrate that there are no prospects of an operation sufficiently successful to enable performance of the alternative provisions of the proposed arrangement relating to the notes."

The objecting creditor further alleged that the debtor had committed an act which would be a bar to the discharge of a bankrupt, in that it knowingly and fraudulently stated in its Statement of Affairs filed herein that no personal withdrawals had been made by any of its officers, directors, or managing executives during the year immediately preceding the filing of the original petition. The Statement of Affairs was executed under oath by Kovac. Question 14(a) thereof asks what personal withdrawals, as stated above, were made. Kovac's answer was "none." Knowingly and fraudulently making a false oath is an act which would be a bar to the discharge of a bankrupt.

■ The Court is of the opinion the Referee correctly found that the objecting creditor made a prima facie showing that Kovac had been using the sole proprietorship and his wholly owned corporations as conduits through which he withdrew funds from debtor. Pursuant to 11 U.S.C.A. § 32, the debtor then had the burden of showing that Kovac had not extracted such sums. Kovac testified as to the negative answer in the statement of affairs, but the Referee, who heard the testimony of the witness and was able to observe his demeanor, found his contradictory statements unworthy of belief.

The Referee, after hearing, entered an order sustaining the objecting creditor's position and denying confirmation of the arrangement. The debtor petitions review of that order, challenging certain findings of the Referee. Nowhere does the debtor attempt to offer more than its own deductions in support of the allegations contained in the petition.

The requisites for confirmation, pertinent to this review, are set out in 11 U.S.C.A. § 766, thus:

"The court *shall* confirm an arrangement if satisfied that * * *

(2) it is for the best interests of the creditors and is feasible;

(3) the debtor has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to the discharge of a bank-

rupt; * * *." (Emphasis supplied.)

It appears to be without dispute that at the time the original petition was filed, one Joseph A. Kovac, who held 91% of debtor's outstanding shares, was President, Treasurer, and a Director of debtor. Evidence was presented by the objecting creditor to show that during the period of Kovac's control of debtor, its deficit had increased by more than $110,000; that Kovac also operated an accounting firm as a sole proprietorship under the name of Joseph A. Kovac and Company, and that he owns all of the outstanding stock in two corporations: Kovac Management and Engineering Co., Inc. and Purity Brand Products, Inc. The record reveals that $102,000 was paid to Kovac as Joseph A. Kovac and Company and Kovac Management and Engineering Co., Inc. for the period from February, 1959, to April, 1961, and that $57,780.50 had been paid in the fiscal year ending April 30, 1961. The report of an audit ordered by the Referee, and other evidence, showed that the aforementioned sums paid were excessive and unreasonable. The Referee further found that other than the sum deposited for the administrative expenses of the proposed arrangement, there was no sufficient prospect of substantial capital being available to the debtor.

■■ There was sufficient evidentiary basis for the Referee's finding that the arrangement was not in the interest of creditors nor feasible (Case v. Los Angeles Lumber Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939); In re 1688 Milwaukee Corporation, 99 F.2d 686 (7th Cir. 1938); Provident Mut. Life Ins. Co. v. University Ev. L. Church, 90 F.2d 992 (9th Cir. 1937); In re H. Krieger & Co., 40 F.Supp. 340 (D.C.Conn.1941) ). Furthermore, acceptance of the plan by the majority of the creditors was not a conclusive test of the soundness of the arrangement, and the Referee was not precluded thereby from making the aforementioned finding. In Case v. Los Angeles Lumber Co., supra, the Court dealt with a plan filed in a section 77B reorgan-

ization. That section, like the former wording of 11 U.S.C.A. § 766, required that a plan be fair, equitable and feasible in order to receive confirmation. The Court, in determining that approval by the requisite number of creditors and stockholders did not conclusively show that a plan was fair and equitable, said (308 U.S. at p. 114, 60 S.Ct. at p. 6):

"At the outset it should be stated that where a plan is not fair and equitable as a matter of law it cannot be approved by the court even though the percentage of the various classes of security holders required by section 77B(f) for confirmation of the plan has consented. * * * The court is not merely a ministerial register of the vote of the several classes of security holders. All those interested in the estate are entitled to the court's protection. *Accordingly the fact that the vast majority of the security holders have approved the plan is not the test of whether the plan is a fair and equitable one.* * * * The contrary conclusion in such cases would make the judicial determination on the issue of fairness a mere formality and would effectively destroy the function and the duty imposed by the Congress on the district courts * * *." (Emphasis supplied.)

Similarly, the Court of Appeals of this Circuit, in the case of In re 1688 Milwaukee Corporation, 99 F.2d 686 at p. 687 (7th Cir. 1938), stated thus:

"Our attention is called to holdings of this Court, in passing upon the questions of 'good faith' and 'feasibility,' wherein importance has been attached to the fact that the requisite number of interested parties have consented to the plan. Persuasive as this argument may be, it is not controlling and must give way in face of actualities as unmistakable as we find in the instant case."

The Court further concludes that since the order of the Referee is not "clearly erroneous," it must, pursuant to the requirement of General Order 47, 11 U.S.C.A. following section 53, affirm the order of the Referee. It was held in the case of In re Skrentny, 199 F.2d 488 (7th Cir. 1952), that:

"General Order 47 is binding not only on the Court of Appeals but also on the district judge sitting in Bankruptcy. The findings of a referee in bankruptcy should be accepted by the District Court except in plain cases.

The order of the Referee is hereby affirmed.