**In the Matter of STATE FINANCIAL SERVICE, INC., Bankrupt.**

No. 76–061.

United States District Court, M. D. Louisiana.

May 25, 1977.

Franz Joseph Baddock, James Richard Mary, Wray & Robinson, Baton Rouge, La., for State Financial Service, Inc., appellant.

William H. Brown, Howell & Brown, Baton Rouge, La., for receiver (trustee), appellee.

Robert R. Rainer, Baton Route, La., for Collector of Revenue, State of La., appellee.

A. Leon Hebert, Hebert & Moss, Baton Rouge, La., for General Rediscount Corp., appellee.

E. GORDON WEST, District Judge:

This is an appeal from certain orders of the Bankruptcy Judge, rendered in the course of proceedings in an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701, et seq. Debtor-bankrupt, State Financial Service, Inc. (SFS) assigns as error the following five orders issued by the Bankruptcy Court:

(1) Order of June 8, 1976, transferring the claim by SFS against General Rediscount Corporation (GRC), a creditor, to the District Court.

(2) Order of June 8, 1976, recalling, vacating, and discharging the rule of April 30, 1976, to show cause, issued against the Collector of Revenue for the State of Louisiana.

(3) Order of June 10, 1976, which prohibited the use of certain funds held by the receiver as the depositary amount required by Bankruptcy Rule 11–38(a) as a precondition to confirmation of any plan of arrangement.

(4) Order of June 22, 1976, refusing to confirm the proposed plan of arrangement and adjudicating the debtor bankrupt.

(5) Order of January 28, 1977, authorizing sale of the movable property of SFS.

■ The facts, as they appear from the record, are as follows. SFS, the appellant herein, filed a petition for a plan of arrangement. The largest debt owed by SFS was to GRC, which had loaned a disputed amount to SFS. SFS being in the business of consumer financing, this loan was secured by an assignment from SFS to GRC of its accounts receivable, under the condition that should SFS commit any of certain stipulated acts detrimental to the security interests of GRC, the latter would automatically have the right to take over the collections of indebtednesses to SFS. One of these acts, as provided in the assignment, was the filing of bankruptcy proceedings. Therefore, when SFS filed its petition for an arrangement, GRC, as an "interested party" under Bankruptcy Rule 11–18(b), pe-

titioned the Court for the appointment of a receiver to take over the business. This the Court did. However, it limited the receiver's authority to collecting outstanding debts and contracting with third parties for the same purpose. SFS then asked the Court to remove the receiver due to the alleged possibility of securing a new line of credit from another source. It was said that the potential creditor could not adequately inspect SFS while it was under receivership. The Court allowed the ordinary staff to remain in charge of the business for an additional two weeks. Thereafter, the receivership was re-imposed. SFS brought suit against GRC in the Bankruptcy Court for alleged misrepresentations and falsehoods contained in GRC's application for the appointment of a receiver, stating that the application has been interposed only to harm SFS and had materially lessened SFS's chances of obtaining a new line of credit. That action was dismissed from the Bankruptcy Court for lack of jurisdiction over the person and over the subject matter. The Bankruptcy Judge stated that:

"Where the controversy is one involving property in the actual or constructive possession of a third person asserting a bona fide adverse claim, the Bankruptcy Court has no jurisdiction to determine summarily that person's claim upon petition by the receiver or trustee unless by that person's consent. Now, without the consent of the adverse claimant, a plenary suit must be brought in the Court of appropriate jurisdiction and this will in turn be governed by § 23 of the Bankruptcy Act.

"Now, in this case, it appears that the relief sought by the complainant, the debtor, is not with respect to property in the custody of the Bankruptcy Court but is, in fact, in the nature of an in personam action. It is not an in rem proceeding which would be within the jurisdiction of the Bankruptcy Court."

It is from this ruling that the first appeal of SFS is taken. We affirm the decision of the Bankruptcy Judge.

The jurisdiction of the bankruptcy courts is limited to matters conferred by statute or implied therefrom. 1 *Collier on Bankruptcy* (14th ed.), ¶ 2.04, pp. 147–148. In arrangement proceedings, this jurisdiction is the same as that possessed by the court in a voluntary bankruptcy, where no petition has been filed in bankruptcy before the arrangement. §§ 312, 322 Bankruptcy Act, 11 U.S.C.A. §§ 712, 722. The normal jurisdiction accorded bankruptcy courts is delineated by § 2 of the Bankruptcy Act, 11 U.S.C.A. § 11. A review of that statute, too lengthy for reproduction here, shows clearly that the bankruptcy court's powers and duties are directed either toward efficient administration of the bankrupt's estate, or toward punishment of criminal violations of the bankruptcy laws. The former category of powers and duties may be further described by observing that those duties connected with efficient administration generally consist of determining claims to and against the property of the bankrupt, appointing trustees and receivers, and supervising them in their efforts on behalf of the estate and creditors. Nowhere in this statute can authority be found pursuant to which the bankruptcy court might exercise jurisdiction over an in personam cause not relating to the property of the bankrupt. According to 1 *Collier on Bankruptcy* (14th ed.), ¶ 2.09, p. 173, the bankruptcy court is a court of equity, and as such, "has summary jurisdiction to determine all claims against and relating to the property of the estate in the court's actual or constructive possession . . . The equitable jurisdiction conferred on the court by § 2(a), however, is not such as to enable the court to entertain a plenary suit in equity to adjudicate controversies having no proper relation to the business with which it is entrusted."

This Court is of the opinion that the complaint filed by SFS against GRC is a matter which lacks the "proper relation to the business" of the Bankruptcy Court. The basis for the complaint, as stated earlier, is the allegation of SFS that GRC made false statements, to the detriment of SFS, in its application to the Bankruptcy Court

for the appointment of a receiver. The requested relief consists of damages and all costs of receivership. Obviously an in personam action, the complaint has nothing at all to do with the property involved in the arrangement. In essence, the suit is, as expressed by GRC, one for corporate defamation. Therefore, the Bankruptcy Court lacked jurisdiction, since in personam suits for tortious or malicious injury are neither included in, nor may they be inferred from, the statutorily designated categories of matters over which the Bankruptcy Court may impose its authority. An analogous situation was presented in *In Re Love B. Woods & Co.,* 222 F.Supp. 161 (S.D.N.Y., 1963), wherein the bankrupt, in response to an involuntary petition filed by its creditors, counterclaimed for damages. The Court there commented:

"While counterclaims can be asserted by an alleged bankrupt in answer to an involuntary petition, to show that the petitioner is not a creditor or not such a creditor as is authorized to file a petition, or to show that the alleged bankrupt is in fact not insolvent and not subject to adjudication, they may not be set up as a basis for the recovery of a judgment for damages against a petitioning creditor. (Citations omitted.) The powers conferred upon courts of bankruptcy by the Bankruptcy Act do not make them courts of general jurisdiction to hear and determine controversies not properly part of a bankruptcy proceeding."

Certainly it cannot reasonably be suggested that this complaint falls within the jurisdictional scope of a court whose jurisdiction under Chapter XI is limited to the debtor and his property, wherever located. See *In re Texas Consumer Financing Corp.,* 480 F.2d 1261 (CA–5, 1973); 11 U.S.C.A. § 711. Accordingly, the Bankruptcy Judge ordered the complaint transferred to the civil docket of the district court pursuant to Rule 915(b) of the Bankruptcy Rules. This he had authority to do. The order appealed from is affirmed.

■ In his brief on the same order, counsel for appellant complains that the order appointing the receiver was improper in that it limited the powers of the receiver to those earlier enumerated, precluding active operation of the business of the debtor. SFS argues that since Rule 11–18(b) of the Bankruptcy Rules provides for the appointment of a receiver "to take charge of the property *and* operate the business of the debtor," (emphasis added), this limitation of the receiver's powers by the Bankruptcy Judge constituted a violation of the rule. While this order was never formally appealed from, and we do not feel compelled to address counsel's arguments thereon, we believe, nevertheless, that some comment is appropriate at this juncture. Suffice it to say that the grant of power to the receiver is always discretionary with the court, and as a condition for the favorable exercise of the grant, the court may impose conditions and requirements. The authority of the receiver is subject in every respect to the control of the court, limited only by the best interests of the estate and its creditors. 8 *Collier on Bankruptcy* (14th ed.) ¶ 6.35(3), p. 954; 14 *Collier on Bankruptcy* (14th ed.) ¶ 11–23.02, p. 11–23–2; *Urban Properties Corp. v. Benson,* 116 F.2d 321 (CA–9, 1946).

■ Appellant next assails the order of June 8, 1976, recalling, vacating, and discharging a previously issued rule to show cause why the Collector of Revenue for the State of Louisiana should not be ordered to answer certain interrogatories propounded to him by SFS. Seeking to determine the tax liability, if any, chargeable to the accounts pledged to GRC, SFS inquired of the Collector *as to the tax liability of GRC* with respect to those accounts; according to counsel for SFS, the possibility of a tax lien priming subsequent security holders would effectively preclude SFS from obtaining a new line of credit—an event of primary importance to the success of the proposed plan. (SFS proposed to pay its debt to GRC, then offer the same accounts as security to the new lender.) The Collector defended on the theory that first, under LSA–R.S. 47:1577, a tax obligation becomes a lien and privilege only upon recordation, and as of that date, no tax lien had been recorded. Further, the Collector argues

that LSA–R.S. 47:1508 prohibits disclosure of "any information" obtained from the records or files of any taxpayer within its custody and administration. The Collector's third contention is that if the legal effect of the assignment from SFS to GRC was to convey *title* to the accounts, then whether or not the accounts were subject to a claim for taxes which may be owed by *GRC* would be of no concern to SFS. On the other hand, if SFS still owned the accounts, then the Collector would still have to file his lien and proof of claim, just as any other creditor. Finally, the Collector argues that the issue of ownership of the accounts is not before the Court. Based upon these reasons, the Bankruptcy Judge agreed with the Collector and dismissed the rule. We affirm. We find nothing in the argument of the debtor which counters the above arguments. LSA–R.S. 47:1508 provides, in pertinent part:

"*Confidential Character of Collector's Records*

"The records and files of the collector respecting the administration of this Subtitle shall be considered confidential and privileged, and neither the collector nor any employee engaged in the administration thereof or charged with the custody of any such records or files shall divulge or disclose, except for the administration and enforcement of this Sub-title, any information obtained from such records or files or from any examination or inspection of the premises or property of any person. Neither the collector nor any employee engaged in the administration or charged with the custody of any such records or files shall be required to produce any of them for inspection or use in any action or proceeding, except in an action or proceeding under the provisions of any Chapter in this Sub-title."

We believe the statute speaks for itself, and that the Bankruptcy Judge properly refused to order the Collector to divulge the information requested by the debtor.

■ Debtor next appeals from the Bankruptcy Judge's order of June 10, 1976, which prohibited the use of certain funds as the depositary amount required by Bankruptcy Rule 11–38(a) as a precondition to confirmation. At the time of the ruling, these funds were in the possession of the receiver. The Court refused to allow the receiver, as disbursing agent of SFS, to utilize $5,000.00 then held by him on the grounds that, most importantly, the funds were subject to a possible claim of ownership by other creditors and were not, therefore, clearly those belonging to SFS. Further, the Court stated that it would not rule on the ownership of these funds, that issue not being before the Court.

We feel that the Bankruptcy Judge's ruling was correct. Bankruptcy Rule 11–38(a) states that the court shall "fix a time before confirmation within which the debtor shall deposit with the disbursing agent, or in such place *and on such terms as the court may approve,* the money necessary to pay all priority debts and costs of administration unless such claimants shall have waived such deposit or consented to provisions of the plan otherwise dealing with their claims, and the money or other consideration which under the plan is to be distributed to other creditors at the time of confirmation." (Emphasis added.) The emphasized language, in our view, indicates that, as is true of many of his other functions, the Bankruptcy Judge is vested with a wide discretion in the matter of the depositary amount. Pretermitting the question of actual ownership of the funds, we think that the very *existence* of a question as to ownership was in itself enough of a "red flag" to indicate to the Court a serious need for the exercise of extreme caution in the handling of this case. Appellant's arguments based on the fact that this was the only possible source of funds avail him little when counterbalanced by the possibility that such funds might belong to another. We are unable to say that the Bankruptcy Judge abused his discretion by ruling in this manner.

■ The fourth order appealed from is that refusing to confirm the second proposed plan of arrangement and converting the Chapter XI proceedings to Involuntary

Bankruptcy. In the words of the Court, the plan was "nebulous, speculative, and unrealistic." The reasons given for refusal to confirm the plan were 1) that no deposit, as required by Rule 11–38(a), had ever been made; 2) no outside financing was in sight; and 3) there had been no realistic showing that the debtor could be rehabilitated. We concur in the findings and heartily approve the ruling.

As we view the problem, the inquiry is sufficiently resolved by noting merely that the required deposit was not made. As noted earlier in this opinion, such a deposit is a prerequisite to confirmation of any plan of arrangement. Bankruptcy Rule 11–38(a).

Addressing the other reasons given by the Bankruptcy Judge, however, we note that 11 U.S.C.A. § 766 requires that the arrangement shall be confirmed only if, inter alia, the court is satisfied that the plan "is for the best interests of the creditors and is feasible." The appellant has shown nothing which could be construed as clearly erroneous on the part of the Bankruptcy Judge. To the contrary, we feel a sound disposition has been made of what appears to be a classic case of undercapitalization. The schedules of debts and property submitted by the debtor, amended twice, show the following: Of $230,110.13 in debts, all but $976.52 were either secured or had priority by laws of the United States. Of its property, which totalled some $405,379.99, $380,226.67 consisted of "contingent and unliquidated claims." Liquid assets accounted for less than $12,000.00 in cash and deposits, the remainder approximating $13,000.00 in depreciating assets, mostly boats and automobiles. Appellants owned nothing in the nature of an appreciating asset. The major creditor, GRC, claimed that over $230,000.00 was owed to it. The fact that such a large part of the property available for the security of creditors consisted of "contingent and unliquidated claims," and the remainder of assets which were depreciating every day, would, it seems be a condition which would make the most stolid of creditors squeamish. The entire operation was apparently a paper empire, and recognizing it as such,

the Bankruptcy Judge dealt with it in the most responsive and efficient manner open to him under the law. We do not propose to act differently, even though, as appellant points out, the plan has been accepted by a majority of the creditors. The fact that there exists a dispute as to the validity of one or more of those acceptances would have no bearing on our decision in this matter regardless of how that dispute was resolved. The acceptance of an arrangement by a majority of creditors is not a conclusive test of the soundness of the plan; the Bankruptcy Judge must use his own independent judgment, keeping in mind the best interests of all concerned. See, e. g., *In re Graco, Inc.,* 364 F.2d 257 (CA–2, 1966); *Technical Color & Chemical Works, Inc. v. Two Guys From Massapequa, Inc.,* 327 F.2d 727 (CA–2, 1964); *In the Matter of Skysweeper, Inc.,* 200 F.Supp. 788 (N.D.Ill., 1962).

Appellant complains that conversion of this Chapter XI case to bankruptcy was error. We find 14 *Collier on Bankruptcy* (14th ed.), ¶ 11–38.02, p. 11–38.8, to be dispositive:

"Should it develop that the debtor is unable to make deposit of the total amount required by the plan and by the Act, it follows that the plan cannot be confirmed as a matter of law and further consequences are prescribed by Rule 11–42, *infra.* Upon that eventuality, the court could either dismiss the case or adjudge the debtor a bankrupt and direct that bankruptcy proceed."

■ The fifth and final appeal stems from the order of January 28, 1977, authorizing private sale of certain movable property of the bankrupt, consisting mainly of office equipment. Counsel for appellant contends that the Court erred, first, in failing to have the property appraised, and second, in allowing the property to be sold privately instead of at public auction, both of which, it is urged, are required by Bankruptcy Rule 606.

We believe that had counsel for appellant taken the time to read Rule 606, this appeal

would never have been brought. That rule plainly states: "The court shall appoint one or more competent and disinterested appraisers, *unless it determines that such appointment is unnecessary.*" With regard to the private sale, the rule provides: "All sales shall be by public auction, *unless otherwise ordered by the court on application to the court and for good cause shown.*" The record amply supports the decision of the Court; the trustee cited depreciation of the assets as a major reason for ordering a private sale, stating that the offer received was, in his opinion, the best that could be obtained. Nevertheless, the Court refused to accept the first offer outright, allowing others to submit sealed bids. The final order of sale accepted a much higher offer. We can find no reason to quarrel with the actions of the Bankruptcy Judge. Under the circumstances, these rulings were eminently supportable.

For the reasons assigned, all of the orders appealed from will be affirmed, and judgment will be entered accordingly.