In re RENTCLUB, INC., Debtor.

Bankruptcy No. 92–2489–8P1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 14, 1992.

Russell M. Blain, Tampa, Fla., for debtor.

Dennis M. Campbell, Miami, Fla., for Transamerica Rental Finance Corp.

## ORDER ON MOTION TO DISMISS OR CONVERT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS another instance when the Debtor's right to seek relief in the bankruptcy court is challenged by one aggressive creditor who pursued the Debtor, albeit without success, sometimes for several years in a non-bankruptcy forum. The recurring challenge as a rule is based on a classic pattern, generally described as the Debtor's bad faith, which, if found to exist, is a basis to dismiss a Chapter 11 case for "cause" pursuant to § 1112(b) of the Bankruptcy Code. *In re Victory Construction Co.*, 9 B.R. 549 (Bankr.C.D.Cal.1981), followed in this Circuit in *In re Albany Partners*, 749 F.2d 670 (11th Cir.1984), *In re Phoenix–Piccadilly Ltd.*, 849 F.2d 1393 (11th Cir.1988), and *In re Natural Land Corp.*, 825 F.2d 296 (11th Cir.1987).

The pattern which is present in the case under consideration does not fit the traditional pattern. Nevertheless, according to Transamerica Rental Finance Corporation (Transamerica), the moving party, the case should be dismissed not really for "cause", i.e., bad faith, but instead, according to Transamerica, because this Debtor is unable to effectuate a plan and this case should therefore be dismissed pursuant to § 1112(b)(2) of the Bankruptcy Code. The facts relevant to the matter under consideration as established at the final evidentiary hearing are as follows.

The Debtor is a Florida corporation formed in 1988 by Mr. Michael McCaskey (McCaskey). The corporation was originally formed by McCaskey to operate a retail establishment for renting household goods and appliances, described in the trade as brown and white goods, for a fixed 24–month term. The rental fee was determined by the units rented. The consumer has no legal obligation to rent the item for the full term, but has a right to acquire full ownership of the rental items without paying any additional sum if the rental term of the item or items involved was completed.

It is the very nature of the rent-to-own business that the inventory of the renter is subject to steady depletion, not only because of customers who meet all of their rent obligations and retain the items rented, but also because of the loss of items rented due to delinquent customers and customers who "skipped," that is moved to an unknown location with the goods. One can easily see from the foregoing that unless the operator of the business replenishes the inventory, the inventory will ultimately disappear or will at least decrease by a substantial degree. It follows from the foregoing that if the inventory is encumbered by a security interest, the collat-

eral of the secured party is in great jeopardy, and unless the interest of the secured party is protected, the secured party may end up with no collateral at all after the passage of time. This is the apprehension which prompted Transamerica to seek protection of the Debtor's inventory, accounts receivables, fixtures and equipment, all pledged as collateral to secure an indebtedness due to Transamerica in excess of $6 million.

The relationship between Transamerica and the Debtor goes back to the early existence of the Debtor in 1988. As noted earlier, the Debtor, which started with an initial capital investment of slightly more than $1,600 and one store, soon embarked on an ambitious expansion program, ultimately ending up with 18 stores and more than 100 employees. It soon became evident that the Debtor bit off more than it could chew. The Debtor's expenses as a percentage of gross sales consistently ran far above the industry standards. For example, according to testimony of an expert regarding acceptable industry standards, salary expenses should not exceed 22–25% of gross sales; the Debtor's salary expenses, prior to the commencement of the Chapter 11 case, were running 40% of gross sales. Equally, according to the expert, rent expenses should not exceed 5–7%; the Debtor's rent expenses were 16%. Overhead should not exceed 8–10%; the Debtor's overhead was above 20%. Product repair expenses should not exceed 2%; the Debtor's product repair expenses ran at approximately 5% of its gross sales.

It was not surprising that the Debtor soon started to default on its obligations, not only to Transamerica but also to its trade creditors. The Debtor's problems culminated in a bitterly-fought lawsuit commenced by the Debtor against Transamerica in the District Court. Transamerica filed a counter-claim and sought and obtained a Writ of Replevin, which was about to be served by the U.S. Marshall when the Debtor filed its Petition for Relief under Chapter 11 on February 28, 1992. Of course, the filing immediately triggered the automatic stay imposed by § 362 of the Bankruptcy Code, and brought to a halt the litigation pending in the U.S. District Court including the Marshall's attempt to replevy the goods covered by the Writ.

At the commencement of this Chapter 11 case, the Debtor had 5,685 BOR (Balance on Rent) units in inventory with a total value of $1,456,049.50. A BOR is a unit which is currently rented to a customer. By March 31, 1992, the Debtor's BOR units decreased to 5,454 with a value of $1,396,441.66; and by April 30, 1992, the Debtor had only 5,408 BOR units valued at $1,377,949.87. It is without dispute that since the commencement of the case, the Debtor closed one of its operating stores and presently has approximately 77 employees. It appears that during March and April, the Debtor produced a positive cash flow, i.e., had receipts in excess of its disbursements after paying all of its current operating expenses, albeit it must be noted that the Debtor pays nothing on its obligations due to Transamerica. Additionally, the Debtor did not make timely rent payments on three of the leases which it intends to assume, although those payments have now been made.

■ The record reveals that the Debtor already filed its Disclosure Statement and Plan of Reorganization, even though the exclusive period granted to the Debtor by § 1112(b) of the Bankruptcy Code has yet to expire. Moreover, this Court already entered a comprehensive order on the Debtor's Motion for authority to use cash collateral. While this Order does not require the Debtor to make periodic payments to Transamerica, it does provide temporary adequate protection of Transamerica's interest in its collateral, which is clearly substantial in value, based on the amount of the debt owed to Transamerica. However, in the absence of any evidence of economic depreciation of its collateral, Transamerica clearly is not entitled to be compensated for loss of opportunity cost. *In re United Savings v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

■ This record clearly would support the proposition that the Debtor's projection

for its economic survival is somewhat questionable, and its chance to achieve reorganization under this Chapter is not without doubt. However, this Chapter 11 case is still in its embryonic stage and the Debtor is proceeding with due speed toward reorganization. Therefore, the Debtor should be given a reasonable chance to conclude this Chapter 11 case without delay. In light of the precarious economic condition of this Debtor, while this Court is satisfied it should be given a short opportunity to achieve rehabilitation, this Chapter 11 case is to be put on the fast track, and unless the Debtor obtains confirmation of a Plan of Reorganization not later than August 1, 1992, this Court will consider to revisit this Motion and enter such Order as appears to be appropriate. These comments are not to be deemed to preclude Transamerica to promptly seek relief if so deemed to be advised if it appears that the collateral position of Transamerica is in serious jeopardy of depletion by the Debtors.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion of Transamerica to Dismiss this Chapter 11 case is denied without prejudice.

DONE AND ORDERED.