## In re LYKES BROS. STEAMSHIP CO., INC., Debtor.

### Bankruptcy No. 95–10453–8P1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 9, 1996.

Harley E. Riedel, Tampa, Florida, for Debtor.

Paul S. Singerman, Miami, Florida, for Official Unsecured Creditors' Committee.

Robert A. Soriano, Tampa, Florida, for Banks.

Morris D. Weiss, Miami, FL, for Genstar Container Corporation.

Robert A. Soriano, Tampa, FL, Robert J. Levine, Davis Polk & Wardwell, New York City, for J.P. Morgan Delaware, Adm. Agt.

John D. Emmanuel, Fowler, White, Gillen, Boggs, Villareal & Banker, PA, Tampa, FL, for Trans Ocean Container Corp. and Xtra, Inc./Xtra Intermodal, Inc.

Ballard Spahr Andrews Ingersoll, Baltimore, MD, for Nat'l Marine Engineers'

Benefial Assn. (AFL–CIO) & District 1–PCD.

W.F. Foster, K.J. Moore, Diane Meyers, Milbank, Tweed, Hadley & McCloy, New York City, for Kreditanstalt Fur Wiederaufbau.

John W. Kennedy, Martin, Pergram & Browning Co., Columbus, OH, for Transinternational System.

Kirlin Campbell & Keating, New York City, for Interpool Ltd./Trac Lease, Inc.

John E. Bradley, Schnader Harrison Segal & Lewis, New York City, for Int'l Terminal Operating Co.

Alexander F. Vitale, Freehill, Hogan & Maher, New York City, for Maher Terminals, Inc.

Bob Westendarp, Houston, TX, for Travel Tech, Inc.

Finkel, Goldberg, Sheftman, & Altman, Columbia, SC, for SC State Ports Authority.

Michael T. Perry, Baton Rouge, LA.

Peter A. Chapman, Princeton, NJ.

Christopher I. Gruenewald, Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Mobile, AL, for Container Services International.

Bernard J. Vaughan, Kenilworth, NJ, for Flexi-Van Leasing, Inc.

John T. Bright, New York City, for Oppenheimer & Co., Inc.

Mark J. Wolfson, Foley & Lardner, Tampa, FL, for American President Lines, Ltd.

Richard G. Hardy, Cleveland, OH, for Horizon Freight Systems.

Ketchey, Horan, Hearn, Neukamm, & Bauman, Tampa, FL, for First American Bulk Carrier Co., Marine Engineers Beneficial Association Pension Trust.

Kirschner, Main, Petrie, et al., Jacksonville, FL, for Suddath Van Lines, Inc.

Frances M. Toole, Washington, DC, Michael A. Cauley, Assistant U.S. Attorney, Tampa, FL, for U.S.

Andrew M. Brumby, Shutts & Bowen, Orlando, FL, for Whitney National Bank.

Patricia J. Churchill, Jefferson City, MO, Kathy R. Webb, Chief, Debt Management Division, Kansas City, MO, for Missouri Dept. of Revenue.

Robert S. Zuckerman, Charlotte, NC, for Sea–Land Service, Inc.

Craig A. Smith, Suelthaus & Walsh, P.C., St. Louis, MO, for 906 Frisco Associates.

Robert W. Blanck, Blanck & Grybowski, Miami, FL, for Seaboard Marine Ltd.

Herbert R. Donica, Evans & Donica, P.A., Tampa, FL, for Kreditanstalt Fur Wiederaufbau.

Paul E. Perry, Memphis, TN, for Farris, Mathews, Gilman, Branan & Hellen, P.L.C.

Bernard C. O'Neill, Jr., O'Neill, Chapin, Marks, Liebman, Cooper & Carr, Orlando, FL, for Louisville Cartage Company.

Jonathan L. Bookman, New Orleans, LA.

Allyson Lyles, Atlanta, GA, for International Business Machines.

William Knight Zewadski, Trenam, Kemker, Scharf, Barken, et al., Tampa, FL, for Lyon Credit Corporation.

Marsha Griffin Rydberg, Rydberg & Goldstein, P.A., Tampa, FL, for Inchcape Shipping Services, Inc.

Michael P. Cotter, Vandeventer, Black, Meredith and Martin, Norfolk, VA, for VA International Terminals.

Julia Sullivan Waters, Holland & Knight, Tampa, FL, for Malin Construction.

Barry E. Bressler, Pelino & Lentz, P.C., Philadelphia, PA, for Commercial Transportation, Inc.

Marinus Quist, New Orleans, LA, for Tidewater Marine, Inc.

Karen Fagin White, Small, White & Marani, Atlanta, GA, for Fepco Trucking, Inc.

Roland Howell, New Orleans, LA.

Stanley H. McGuffin, Sinkler & Boyd, P.A., Columbia, SC, for G & P Trucking Company, Inc.

John K. Olson, Stearns Weaver Miller, Weissler, Alhadeff & Sitterson, Tampa, FL, for Transamerica Leasing, Inc.

Arthur Steinberg, Kaye, Scholer, Fierman, Hays & Handler, New York City, for Greyrock Capital Group Inc.

John B. Stockton, Katherine Throckmorton, Stamford, CT, for Greyrock Capital Group Inc.

Julia Sullivan Waters, Holland & Knight, Tampa, FL, for BP Marine Americas.

Thomas B. Mimms, Jr., MacFarlane Ausley, Ferguson & McMullen, Tampa, FL, for Lykes Bros., Inc.

The Maritime Asbestosis Legal Clinic, a division of The Jaques Admiralty Law Firm, Detroit, MI.

Richard J. Tannenbaum, Steefel, Levitt & Weiss, Stamford, CT, for National Computer Rental, Inc.

Walter H. Lion, Maddy, Lion & Greenwood, New York City, for Safbank Line, Ltd.

C. Graham, D. Dillon, Thacher Proffitt & Wood, New York City, for American Hull Insurance Syndicate.

John D. Emmanuel, Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, FL, for Blue Water Associates L.P.

Tom C. Nord, Gatx Capital Corp., San Francisco, CA, for Blue Water Associates, L.P.

Patricia A. Redmond, Stearns Weaver Miller Weissler, Alhadeff & Sitterson, Miami, FL, for Empire Truck Lines, Inc.

John K. Olson, Stearns Weaver Miller Weissler, Alhadeff & Sitterson, Tampa, FL, Babette A. Ceccotti, Cohen, Weiss and Simon, New York City, for Masters, Mates & Pilots Plans.

Debra A. Dandeneau, Weil, Gotshal & Manges, Miami, FL, for Compania Sud Americana de Vapores.

Robin E. Riley, Iselin, NJ, for Safbank Line Limited.

Richard A. Aguilar, McGlinchey Stafford Lang, New Orleans, LA, for Mutual Life Insurance Co. of NY.

Martin G. Bunin, Reid & Priest LLP, New York City, for Mitsubishi Heavy Industries, Ltd.

Alan Kornberg, Rbrt. Drain, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Blue Water Associates L.P.

Mark P. Hirschhorn, Gen. Cnsl., Gilman Financial Services Inc., New York City, for Blue Water Associates L.P.

Thomas E. Fotopulos, Fotopulos & Spridgeon, Tampa, FL, for Chemoil Corporation.

Lugenbuhl, Burke, Wheaton, Peck, Rankin & Hubbard, New Orleans, LA, for E.N. Bisso & Son, Inc. and Dixie Machine Welding & Metal.

Timothy J. Falcon, Marrero, LA, for Sigley Haylock.

Paul M. Nussbaum, Whiteford, Taylor & Preston, Baltimore, MD, for Phoenix Motor Express, Inc.

Timothy B. Shea, Nemirow, Hu, Kurt Tankersley, Washington, DC.

Baker & McKenzie (M. Wiedmeier), Miami, FL, for Transpac Representaciones Transpacificas, S.A. de C.V.

W. Keith Fendrick, Annis, Mitchell, Cockey, Tampa, FL, for Barnett Bank.

Meyer Orlando & Evans PC, Houston, TX, for Container Terminal/Galveston.

Honigman Miller Schwartz & Cohn, Tampa, FL, for Steelcase Financial Services.

Sharan Acker, Houston, TX, for Empire Truck Lines, Inc.

Stuart D. Gavzy, Fair Lawn, NJ, for Garfield Container Transport.

Paul Steven Singerman, Miami, FL, for Official Unsecured Cred. Comm.

Aballi, Milne, Kalil, Garrigo & Sanchez, Miami, FL, for Triton Container International.

Marsha G. Rydberg, Rydberg & Goldstein, P.A., Tampa, FL, for Landslide, Inc.

W. David Johnson, Lyons, Pipes & Cook, P.C., Mobile, AL, for Atlantic Technical Services.

Gary R. Blume, P.C., Phoenix, AZ, for ATW America, Inc.

Michael E. Boutzoukas, Gold & Resnick, P.A., Tampa, FL, for Ny-Way Service, Inc.

Zala Forizs, St. Petersburg, FL, Winthrop, Stinson, Putnam & Roberts, (Siegel), Seward

& Kissel, New York City, for Mitsui Engineering/Shipbuilding Misui & Co. (USA) Inc.

Douglas D. Mancill, San Francisco, CA, for Graham & James.

Coll Davidson Carter Smith, Salter & Barkett, Miami, FL, for IBJS Commercial Corporation.

Thomas A. Giacchetto, Sr. Counsel, Boston, MA, for Xtra, Inc/Xtra Intermodal, Inc.

W. David Johnson, Lyons, Pipes & Cook, P.C., Mobile, AL, for Inchcape Shipping Services, Inc.

Michael R. Carey, Carey, O'Malley, Whitaker Manson, Tampa, FL, for Interior Design Services, Inc.

Douglas P. McClurg, Michael P. Brundage, Hill, Ward & Henderson, P.A., Tampa, FL, for Barbours Cut Intermodal Services, New Orleans Marine Contractors, Cooper/T. Smith Stevedoring, Inc.

Stephen L. Williamson, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, LA, for Marine Office of America Corp.

Jon Yard Arnason, Haight, Gardner, Poor & Havens, New York City, for Flota Mercante Grancolombiana.

Alfred Yudes, John Kissane, Watson, Farley & Williams, New York City, for Den Norske Bank A.S.

Steven M. Weinger, Kurzban Kurzban Weinger Tetzelli, Miami, FL, for Motor Svcs. Hugo Stamp, Inc.

Mary Ann Kilgore, Omaha, NE, for Union Pacific Railroad Company, Missouri Pacific Railroad Co.

Trudy M. White, Dep. Gen. Cns., Sarah Posada, Baton Rouge, LA, for LA Dept. of Revenue/Taxation.

Brett P. Furr, Taylor, Porter, Brooks, Phillips, Baton Rouge, LA, for Premier Bank, National Assn.

Allen S. Carman, Battle & Edenfield, P.A., Brandon, FL, for Stephen B. Foley, P.C., Rite–Way Transport Company, B & W International.

Catherine Peek McEwen, Akerman Senterfitt & Eidson, Tampa, FL, for Virginia Int'l Terminals, Inc., Flota Mercante Grancolombia Compania Chilena de Navegacion, Interoceanica S.A., Kansas Packing Co., Inc., and Container Applications Int'l.

Darryl M. Burman, Dicecco, Fant & Burman, L.L.P., Houston, TX, for Gulf Maritime Services, Inc.

Robert J. Philips, Bigham Englar Jones & Houston, New York City, Fireman's Fund Insurance Co.

Thomas J. Hunt, Law Offices of Thomas J. Hunt, Boston, MA, for William Bouchard.

William H. Johnson, Philadelphia, PA, for Consolidated Rail Corporation.

Julia Sullivan Waters, Holland & Knight, Tampa, FL, for Marines Repairs, Inc.

Raymond J. Urbanik, Munsch Hardt Kopf Harr & Dinan, Dallas, TX, for Anheuser–Busch Companies, Inc.

J. Stephen Simms, David O. Treadwell, Jr., Greber & Simms, Baltimore, MD, for Textainer Equipment Mgt. Ltd., International Container Equip., Moran Towing Corporation, E.I. Kane Intermodal Transport.

William C. McIntyre, P.A., Stuart, FL, for Career Enhancement Internat'l.

Donald A. Krach, Asst. Atty. Gen., Baltimore, MD, for Maryland Port Administration.

Andrew M. Brumby, Shutts & Bowen, Orlando, FL, for Prudential Insurance Co/America.

David W. Skeen, Wright, Constable & Skeen, Baltimore, MD, for Egan Marine Contracting Co.

Julia Sullivan Waters, Holland & Knight, Tampa, FL, for Malin Environmental.

David S. Jennis, Williams, Reed, Weinstein, Schifino & Mangione, P.A., Tampa, FL, for Textainer Equipment Mgt., Ltd., Int'l Container Equipment Ltd., Moran Towing Corporation, E.I. Kane Intermodal Transport.

Lawrence Landgraff, Office of the General Counsel, Washington, DC, for Pension Benefit Guaranty Corp.

Law Offices of Jacob Kansas, New Orleans, LA, for Federal Fibre Mills Condo Ass'n.

Elizabeth Blair Starkey, Cappiello Hofmann & Katz, New York City, for NMU Benefit Plans.

Lance J. Arnold, Baldwin & Haspel, L.L.C., New Orleans, LA, for Susan Kreuger.

William Knight Zewadski, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, Tampa, FL, for Enjet, Inc., Mutual Life Insurance Co. NY.

Robert G. Skelton, Branford, CT, for The Travelers Insurance Co.

Cindy L. LoCicero, Gibbs & Runyan, P.A., St. Petersburg, FL, for Allied Van Lines, Inc.

Robert A. Schatzman, Schantz, Schatzman, Aaronson, Miami, FL, for Power Computing Company.

Richard J. Tomeny, Jr., PLC, Metairie, LA, for Premier Trucking, Inc., Trans Gulf, Inc.

Barbara A. Sprung, San Francisco, CA, for Southern Pacific Transportation.

Lamberth, Bonapfel, Cifelli, Willson & Stokes, (Stout), Atlanta, GA, for Wheels America, Inc.

Thomas J. Hunt, Boston, MA, for Martin Morrissette.

Keller & Houck, Miami, FL, for Cronus Containers Limited.

Flynn, Delich & Wise (S. Delich), San Francisco, CA, for Cronus Containers Limited.

Walter Z. Steinman, Bala Cynwyd, PA, for Roy Bodden, John C. Parker.

Richard C.E. Jennings, Savannah, GA, for Savannah Marine Consultants.

Brett D. Orlove, Grossberg, Yochelson, Fox, Washington, D.C., for Eleven Hundred Connecticut Avenue Limited Partnership.

Richard P. Lerner, Lambos & Giardino, Andre Mazzola, Gleason & Mathews, P.C., New York City, for NYSA–ILA Funds.

John A. Anthony, Shackleford, Farrior, Stallings & Evans, Tampa, FL, for Turecamo of Savannah, Inc., Turecamo Maritime, Inc., Columbia Coastal Transport, Inc., White Stack Maritime, Inc., The Port Authority of Houston.

Trey Hardin, Lane, Trohn, Clark, Bertrand, Vreeland & Jacobson, Barton, FL, for Dixie Machine Welding & Metal, E.N. Bisso & Son, Inc.

Pachulski, Stang, Ziehl & Young, Los Angeles, CA, for Flexi–Van Leasing, Inc.

Jon Yard Arnason, Haight, Gardner Poor & Haven, New York City, for Compania Chilena De Navegaci.

Thomas J. Hunt, Boston, MA, for Leon M. Banks.

Terry M. Brocklehurst, Clearwater, FL, for Capital Data, Inc.

Hendrik G. Milne, Miami, FL, for Triton Container Int'l.

Cynthia J. Thomas, New Orleans, Louisiana, for Board of Commissioners of the Port of New Orleans.

Jeffrey W. Warren, Bush Ross Gardner, Warren & Rudy, Tampa, FL, for Cooper/T. Smith Stevedoring, Crescent Towing & Salvage Co., Savannah Docking Pilots Assn.

Mr. Horst Seissinger, Federal Republic of Germany, for Kreditanstalt Fur Wiederaufb.

Collier, Shannon, Rill & Scott, (Rodgers), Washington, DC, for Special Counsel to Debtor Labor and Employee Relations.

Thomas C. O'Brien, O'Brien & Barbahen, Chicago, IL, for Illinois Ocean Unlimited, Inc.

Charles M. Meyer, Santen & Hughes, Cincinnati, OH, for TLX, Inc.

John A. Anthony, Shackleford, Farrior, Stallings & Evans, Tampa, FL, for Gulf Copper Manufacturing Corp.

Edward Morrelli, Brooklyn, NY, for the Chase Manhattan Bank, N.A.

Sher & Blackwell (R. Blackwell), Washington, DC, Lau, Lane, Peiper, Conley & McCreadie, Tampa, FL, for Special Counsel to Debtor Maritime Matters.

Jeremy O. Harwood, Healy & Baillie, New York City, for Nepomuk Shipping Co. Ltd.

Jeffrey W. Warren, Bush Ross Gardner Warren & Rudy, Tampa, FL, for Association of Maryland Pilots.

Catherine Peek McEwen, Akerman, Senterfitt & Eidson, Tampa, FL, for American Hull Ins. Syndicate.

David J. Dempsey, Coleman & Dempsey, Atlanta, GA, for 1600 Parkwood Circle Partners.

Martin F. Casey, Chalos & Brown, P.C., New York City, for W.E. Cox & Co., agt. of Equinox.

Susanna S. Piller, Stafford, Trombley Purcell Lahtinen, Owens & Curtin, Plattsburgh, NY, for F.W. Myers & Co., Inc.

Matt Beal, Lowndes, Drosdick, Doster, Kantor & Reed, Orlando, FL, for 1100 Connecticut Avenue, L.P.

Jane Wessler Marshall, Terriberry, Carroll & Yancey, New Orleans, LA.

Edward P. Flood, Chalos & Brown, P.C., New York City, for International Paper Company, Inc.

J.W. Bartlett, K.E. Wherthey, Wilson, Elser, Moskowitz, Edelman & Dicker, Baltimore, MD, for Association of Maryland Pilots.

Clarence F. Favret, III, Favret, Demarest, Russo & Lutkewitte, New Orleans, LA, for Gulf States Intermodal, Inc., Gulf States Marine Terminal, Gulf States Cartage, Inc., Star Rider Transportation, Inc.

Bill R. Bludworth, Bludworth & Associates, P.C., Houston, TX, for W.W. Rowland Trucking Co., Inc., W Winners Container Svcs., Inc., Western Container Services.

Ewell H. "Jack" Jackson, IV, Houston, TX, for Intercargo Insurance Company.

Jan M. Kuylenstierna, Tampa, FL, for Hayden & Milliken, P.A.

Dianne Coffino, Dewey Ballantine, New York City, for the Chase Manhattan Bank, N.A.

Betsy L. Benedict, Stanford R. Solomon, P.A., Tampa, FL, for SC State Ports Authority.

R. Wade Wetherington, Tampa, FL, for Biscayne Bay Pilots Association.

Michael P. Brundage, Hill, Ward & Henderson, P.A., Tampa, FL, for Stevedoring Svcs of America.

Thomas L. Johns, New York City, for ABS Oil Testing Services.

Robin S. Trupp, Anderson & Orcutt, P.A., Tampa, FL, for Tampa Port Authority.

Larry M. Foyle, Kass Hodges, P.A., Tampa, FL, for Dewey Day.

M. Brundage, D. McClurg, Hill, Ward & Henderson, P.A., Tampa, FL, for Malin Construction Company.

Montgomery, Barnett, Brown, Reed, Hammond & Mintz (Gooch), New Orleans, LA, for Aquamaster–Rauma Ltd., Pohjola Insurance Company, Ltd.

Eloise A. Guzman, Calame, Linebarger, Graham & Pena, Houston, TX, for City of Houston/HCC System.

Douglas P. McClurg, Hill, Ward & Henderson, P.A., Tampa, FL, for New Orleans Marine Contractors.

Edward P. Flood, Chalos & Brown, P.C., New York City, for LEP Profit International, Inc.

Christopher W. Parker, McDermott, Will & Emery, Boston, MA, for CSC Index Corporation.

Larry M. Foyle, Kass Hodges, Tampa, FL, for Sidney Albert Zuniga.

Edward M. Gleason, Jr., Washington, DC, for Nat'l Marine Eng. Beneficial Assn. & Dist. 1–PCD, Meba.

Edward P. Flood, Chalos & Brown, P.C., New York City, for National Cargo Bureau, Inc.

Ernest J. Marquart, Shumaker, Loop & Kendrick, Tampa, FL, for Universal AM–Can, Ltd.

Darold Maxwell, Wm. V. Walker, Maxwell & Walker, L.L.P., Houston, TX, for Refrigerated Container Service, Refrigerated Container California, Refrigerated Container Systems, Refrigerated Container Miami, Refrigerated Container Charles, Refrigerated Container New Jersey.

Michael J. Korn, Korn, Zehmer & Gellatly, P.A., Jacksonville, FL, for Dalton & Rosberg Advertising.

Larry M. Foyle, Kass Hodges, Tampa, FL, for Barbara Hurst.

Nakamura & Quinn (G.N. Davies), Birmingham, AL, for Nat'l Marine Eng. Beneficial, Assn. & Dist. 1–PCD, Meba.

Barbara A. Sinsley, Trybus, Woodward & Sinsley, Tampa, FL, for Ron Colson.

Stephen M. Vaughan, Mandell & Wright, P.C., Houston, TX.

Ronald S. Beacher, Buchalter, Nemer, Fields & Young, New York City, for USL Capital Fleet Services.

## AMENDED ORDER DENYING BANKS' MOTION UNDER 11 U.S.C. § 1112(b) TO CONVERT CASE TO CHAPTER 7

ALEXANDER L. PASKAY, Chief Judge.

This is a yet-to-be-confirmed Chapter 11 case filed on October 11, 1995, by Lykes Brothers Steamship Co., Inc. (Debtor). The immediate matter under consideration is a Motion to Convert Case to Chapter 7 (Motion), filed by J.P. Morgan Delaware, Morgan Guaranty Trust Co., Whitney National Bank and Premier Bank, N.A. (Banks), members of a group of asset-based lenders. The Motion is filed pursuant to § 1112(b)(2) of the Bankruptcy Code and is based on the Banks' contention that the Debtor is suffering from continuing loss to or diminution of the estate and that there is an absence of a reasonable likelihood of rehabilitation. The Motion was filed at 1:21 PM on Monday, May 6th, just moments before a regularly scheduled hearing began on other numerous and miscellaneous, properly-noticed matters in this Chapter 11 case. Ordinarily, the moving party, in this instance the Banks, would like a speedy ruling on the motion and the Debtor would violently object to immediate consideration of the Motion on the basis of insufficient service and notice. Surprisingly, at approximately 1:30 PM, the Debtor filed in open court its Emergency Motion for an Immediate Trial of Motion to Convert, in which it waived any objection to the almost non-existent notice

and demanded that the Court consider the Banks' Motion forthwith.

The Debtor's Motion was supported by the Official Committee of Unsecured Creditors (Unsecured Creditors Committee), which joined the Debtor in urging that an immediate hearing and resolution of the issues raised by the Motion was necessary because the mere filing of the Banks' Motion would negatively impact the Debtor's business as soon as the news was publicized and disseminated to the shipping industry, a result which this Debtor can ill afford. Although this Court's May 6th afternoon calendar was fully booked and included a final evidentiary hearing to determine the validity, extent and priority of a maritime lien claimed by the South Carolina State Ports Authority, this Court agreed to take up the Motion after the conclusion of the maritime lien litigation.

The facts relevant to the issues raised by the Banks' Motion, as established by the record, may be summarized as follows: Prior to commencement of this Chapter 11 case, the Banks financed the Debtor's business operations under a Credit Agreement (Agreement), which was a revolving loan agreement secured by the Debtor's accounts receivables. Under the Agreement, the advances were originally capped at $30 million and later reduced to $25 million, and were tied to the borrowing base fixed by the Agreement.

It is without substantial dispute that, on the date of filing the Chapter 11 case, the balance owed to the Banks stood at an amount in excess of $13 million and the Bank's collateral, i.e., the accounts receivables, at $60 million. The borrowing base was determined by eligible receivables which, in turn, were determined by discarding from the total receivables those considered uncollectible because they were over the acceptable aging limit or were subject to serious disputes or litigation or those on which the Bank could not perfect a security interest.

On October 11, 1995, in conjunction with the filing of its Chapter 11 Petition, the Debtor filed an Emergency Motion for Authority to Use Cash Collateral, i.e., the collections from the accounts receivables pledged to the Banks. This Court immedi-

ately entered an Order Authorizing Interim Use of Cash Collateral, Granting Replacement Lien and Scheduling Hearing. In that Order, the Banks were given, as adequate protection, a replacement security interest in accounts receivables and other cash collateral, including proceeds, of the Debtor generated post-petition. A preliminary hearing was scheduled for October 26, 1995, with proper notice to all interested parties. Thereafter, on December 19, 1995, this Court entered its Agreed Order Authorizing Debtor to Use Cash Collateral and Granting Security Interests and Administrative Priority Under 11 U.S.C. § 364 (First Cash Collateral Order). The First Cash Collateral Order provided that the Debtor would make weekly adequate protection payments to the Banks in the amount of $31,600.00, and that the borrowing base would be calculated pursuant to the Agreement. It is without dispute that the Debtor abided by the terms of the First Cash Collateral Order.

On February 21, 1996, at a duly noticed hearing, this Court revisited the issue of the Debtor's continuing use of cash collateral and considered certain objections to such use. Thereafter, on March 5, 1996, this Court entered its Order Authorizing Debtor to Use Cash Collateral and Granting Security Interests and Administrative Priority under 11 U.S.C. § 364 (Second Cash Collateral Order), extending the Debtor's use of cash collateral under the terms contained in the First Cash Collateral Order through April 8, 1996.

On April 23, 1996, the Debtor's use of cash collateral was again heard, together with certain objections, and, at the request of the Debtor and the Banks, the matter was continued until May 6, 1996. In the interim, the Banks, the Debtor and the Unsecured Creditor's Committee resumed discussions concerning further extension of the authority to use cash collateral previously granted. During that time, the Debtor and the Banks arrived at a Stipulation Providing for Continued Use of Cash Collateral (Stipulation) as to the terms of the adequate protection to be furnished to the Banks; however, the Unsecured Creditors Committee refused to join in the Stipulation and objected to the marked increase in required adequate protection payments.

Although counsel for the Banks mailed out, on April 25, 1996, a Notice of Hearing to Consider Stipulation Providing for Continued Use of Cash Collateral, no motion was ever filed either by the Banks or by the Debtor. Moreover, the time fixed in the notice to object to the Stipulation was far less than adequate. Thus, it was no surprise that numerous objections were registered to this Court's consideration of the Stipulation and non-existent motion to approve the Stipulation, and the matter had to be rescheduled with adequate notice. It is without dispute that even though the Stipulation was yet to be approved by the Court, the Debtor made two adequate protection payments in the amount of $120,000 each, on April 29th and May 6th, respectively, to the Banks pursuant to the Stipulation. Notwithstanding, the Banks, apparently frustrated by the opposition of the Unsecured Creditors Committee to the Stipulation, filed the Motion presently under consideration seeking a conversion of this Chapter 11 case to a Chapter 7 liquidation case.

## CURRENT STATUS OF THE BANK'S BORROWING BASE

The operational history of the Debtor since the commencement of the case reveals the following: As of the petition filing date, the Debtor had gross accounts receivables of $60,621,000 and, after discounting ineligible receivables and making some other adjustments, had net adjusted accounts receivables of $47,349,000. According to the Account Receivable Analysis, on April 27, 1996, the Debtor's gross accounts receivables were $50,930,000 and, after making the same adjustments, showed an outstanding net adjusted receivable balance of $42,430,000. (Debtor's Exhibit 6).

The accounts receivables of the Debtor at any given time, of course, are directly tied to TEU's (Twenty Equivalent Units) lifted. There is hardly any doubt that shortly after commencement of the case, there was an immediate decrease of TEU's, which are historically subject to seasonal fluctuation. However, by January 1996, the TEU's had

increased and have ever since maintained a stable level. (Debtor's Exhibit 3). Most importantly, the traffic to Europe, which represents a major portion of the revenues of the Debtor, increased dramatically and indicates a high level of shipping activity. (Debtor's Exhibit 2). The majority of the eligible accounts receivables of the Debtor, representing the bulk of the Debtor's revenues, are owed by major corporations, all of which are either Fortune 500 companies or considered in the trade to be blue chip companies, e.g., Monsanto Chemical, DuPont Chemical, Goodyear, Dow Chemical, Phillip Morris and the like. (Debtor's Exhibit 8). The collateral-to-debt ratio in October, 1995, was 3.45 to 1 resulting in a cushion of 245 percent. On April 27, 1996, that ratio was 3.31 to 1, with a cushion of 231 percent. (Debtor's Exhibit 7). Contrary to the claim of the Banks, the value of the collateral did not decline $20 million, but rather, the decline was only, in fact, $6 million. In fact, there is evidence in this record to support that the decline was only $5 million.

## CURRENT CASH POSITION OF THE DEBTOR

The evidence indicates that on the date of commencement of the case, the Debtor had close to $6 million in cash which immediately radically declined for several reasons: one, the impact on the Debtor's business of its Chapter 11 filing and the attendant publicity posed some serious concern among the Debtor's customers and apprehension that the Debtor would not be able to perform under its contracts and deliver the cargos entrusted to it; two, the overseas vendors demanded substantial deposits and the Debtor was required to make, within two weeks of filing its Chapter 11 petition, a $5 million cash deposit; three, the cumulative effect of slow liftings in December 1995, due to the decline of the pipeline business in Northern Europe, which precipitated a drop to 900,000 TEU's.

On the other hand, during the last months, the TEU's increased to 1.6 million, or almost double the previous liftings from Northern Europe to the United States. (Debtor's Exhibits 4 and 5). As of the most recent cash report, the Debtor has $2 million in cash.

One would be less than candid not to admit that the Debtor's cash position is currently precarious. In this connection, it should be pointed out that the Debtor, so far, has made more than $1 million in adequate protection payments to the Banks.

## INTERNAL MANAGEMENT OF THE DEBTOR

The Banks placed great reliance on the undisputed fact that, on the date of commencement of the case, the Debtor's internal recordkeeping system was less than adequate and, in fact, the Debtor was not able to generate reliable financial data requested by the Banks. For instance, it is now admitted by the Debtor that the Borrowing Base Certificate dated April 30, 1996, incorrectly indicated that the total eligible receivables were only $10,542,000, thus reflecting a negative position of the Banks of $16,453,000. (Banks' Exhibit 1). This reliance is misplaced, first, because it is now conceded and admitted that the data furnished in this report is incorrect and second, because the amount of indebtedness to the Banks stated to be $16,453,000 includes the amount owed to Lykes Brothers, Inc., an affiliate of the Debtor who is a participant in this syndicated loan, albeit with its portion of the total indebtedness subordinated to the interests of the Banks.

Next, at the time of the commencement of the case, the Debtor maintained its internal accounting records through the LYNX computer system, which apparently was not suitable initially to track the actual collections and reconcile them with the accounts receivables, which resulted in a distorted financial picture. The Debtor adjusted its internal recordkeeping operation, and although the readjustment process is not yet concluded, it appears to be well on the road to reaching the point at which the Debtor will be able to furnish accurate financial data. Be that as it may, there is credible evidence in this record to support the proposition that the Debtor's current method of recordkeeping is satisfactory and generally accepted in the shipping industry, although it may not be acceptable in another industry. Moreover, the Debtor brought in a turnaround specialist with a proven track record in assisting financially

troubled companies, both inside and outside of bankruptcy, who is now fully in charge of the operation of the Debtor.

It is also evident from this record that the Debtor has taken steps to reduce its costs of operation, including engaging in extensive reconfiguration of its fleet by, for example, limiting its activities to the Northern Europe, Mediterranean, Adriatic and North African trade routes.

### LEGAL PRINCIPLES GOVERNING DISMISSAL UNDER § 1112(b)(2)

■ It should be noted at the outset, that the provisions of Chapter 11 are remedial and designed to assist a financially troubled economic entity to achieve rehabilitation. It is axiomatic that the courts should be reorganization-minded and public policy clearly prefers rehabilitation to liquidation. It is equally true, however, that if the entity has reached not only a moribund stage but arrived at the bankruptcy court with rigor mortis already set in, it deserves nothing more than a speedy burial. There is no justification to resuscitate a dead or semi-dead corpse. It has been repeatedly stated that the real test is the need for reorganization and a sincere honest desire to achieve rehabilitation. On the other hand, "[h]owever honest in its efforts the Debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impractical schemes for resuscitation." *Tennessee Publishing Co. v. American National Bank*, 299 U.S. 18, 22, 57 S.Ct. 85, 87, 81 L.Ed. 13 (1930). The Motion under consideration seeks a conversion pursuant to § 1112(b)(2), which warrants the conversion of a Chapter 11 case to a Chapter 7 case for continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation. This requirement is in the conjunctive, and it clearly is the burden of the Movant to prove both of these elements. *See, e.g., In re All American of Ashburn, Inc.*, 40 B.R. 104 (Bankr.N.D.Ga. 1984); *In re Powell Bros. Ice Co.*, 37 B.R. 104 (Bankr.D.Kan.1984). Very few Chapter 11 debtors arrive in the bankruptcy court with their coffers stuffed with hard currency and with a history of successful and profitable operations. Neither is there any empir-

ical evidence to support the proposition that the mere filing of a Chapter 11 Petition operates · as a magic wand to produce an instant miracle and turn a losing operation into a profitable one overnight. This Court, as many others, has been reluctant in the past either to dismiss or convert a Chapter 11 case in its early or embryonic stage. *See, e.g., In re Clause Enterprises of Ft. Myers, Ltd.*, 150 B.R. 476 (Bankr.M.D.Fla.1993); *In re Rentclub, Inc.*, 141 B.R. 235 (Bankr. M.D.Fla.1992). ·

■ In order to prevail under § 1112(b) in the early stages of a case, the moving party has the burden to prove that the whole scheme is no more than a pipe dream—an utterly hopeless and unrealistic prospect totally devoid of any factual basis to support the Debtor's rehabilitation. *E.g. In re Economy Cab & Tool Co.*, 44 B.R. 721 (Bankr.D.Minn.1984). The Banks place a great emphasis on the fact that the Debtor has not been able, so far, to propose a meaningful business plan and that it has no audited financial statements. According to the Banks, that latter fact supports the proposition that the Debtor has no realistic expectation of achieving rehabilitation under Chapter 11. This Chapter 11 case has been pending for approximately seven months and this Court takes judicial notice of the fact that the Debtor is involved in extensive and complex litigation involving issues which must be resolved prior to formulation of any meaningful Plan of Reorganization designed to preserve the going concern value of the Debtor's business. Considering these legal problems, clearly, this Chapter 11 case does not have the procrastination history condemned by courts. This Court is not oblivious to the admonition by Judge Clark in his concurring opinion in *In re Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d 363, 374 (5th Cir.1987) that "a reorganization is not a Holy Grail to be pursued at any length. Creditors are entitled to a prompt determination of efficacy." *Id.* However, there is ample justification in this case to overcome the suggestion that the Debtor or the Unsecured Creditors Committee has procrastinated and is improperly delaying the progress of this reorganization case.

The alternative suggestion by the Banks, i.e., conversion, would cause nothing but ut-

ter chaos and would destroy forthwith the going concern value of the Debtor's business which forms the core of the entire reorganization process. This Court has no difficulty in rejecting the notion that the Debtor's going concern value could be preserved in a Chapter 7 case by a Trustee. First, while a Trustee may be authorized to operate the Debtor's business temporarily by virtue of § 721 of the Bankruptcy Code, presumably none of the current prime customers of Lykes would be lined up and anxious to be in business with a Chapter 7 liquidating Trustee. Neither is there any doubt that the account debtors would be begging the Chapter 7 trustee to accept payment when he or she is attempting to collect the receivables.

Moreover, in the event this Chapter 11 case is converted, Mitsubishi Heavy Industries, Ltd. and Mitsui Engineering Heavy Industries, Ltd. (Japanese Shipyards) who hold preferred ships' mortgages on the Debtor's L–9 vessels would attempt to immediately seize the vessels, including the cargo, and that would speedily bring to a halt any contemplated operation of the Debtor's Chapter 7 business by the Chapter 7 Trustee. Only the Banks are apparently anxious to terminate this Chapter 11 case, and the fact of the matter is that the Unsecured Creditors Committee is fully supportive of the Debtor and consented to the extension of the exclusivity period. By the way, the Banks would also be supportive of this Debtor, provided this Court approves the adequate protection Stipulation.

There is hardly any doubt that a conversion at this time would not only be premature based on these factors, but would not be in the interests of the general estate, nor upon serious reflection, in the interests of the Banks. Based on the facts of this case, it is not unreasonable to infer that the Motion was filed solely for the purpose of using psychological leverage against the Unsecured Creditors Committee to overcome their objection to the proposed Stipulation for use of cash collateral. This conclusion is further supported by the fact that counsel for the Banks conceded that if the Unsecured Creditors Committee no longer objects to the Stipulation and it is approved by this Court, the Banks are willing to withdraw their Motion

to convert this case. In the last analysis, this record is woefully lacking in any persuasive evidence which would warrant the finding that this Debtor will continue to suffer significant losses and has no reasonable expectation or likelihood of achieving reorganization.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Banks' Motion Under 11 U.S.C. § 1112(b) to Convert Case to Chapter 7 be, and the same is hereby, denied.

It is further

ORDERED, ADJUDGED AND DECREED that the Debtor's Emergency Motion for an Immediate Trial of Motion to Convert be, and the same is, hereby denied as moot, inasmuch as the motion has been heard.

DONE AND ORDERED.